Page 2

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District | Boston |
|---|---|---|

| Name (under which you were convicted): Leroy Williams | Docket or Case No.: |
|---|---|

| Place of Confinement: MCI - Shirley Medium | Prisoner No.: W432288 |
|---|---|

| Petitioner (include the name under which you were convicted) Leroy Williams | v. | Respondent (authorized person having custody of petitioner) Michael Thompson, Superintendent |
|---|---|---|

| The Attorney General of the State of Massachusetts |
|---|

## PETITION

04cv12642 DPW

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   Suffolk Superior Court, Boston, MA

   (b) Criminal docket or case number (if you know): Docket No. 075973-76
2. (a) Date of the judgment of conviction (if you know): April 17, 1990
   (b) Date of sentencing: April 17, 1990
3. Length of sentence: Life without parole 075973
4. In this case, were you convicted on more than one count or of more than one crime? Yes ☒  No ☐
5. Identify all crimes of which you were convicted and sentenced in this case: _____
   075975 - Trafficking in Cocaine (3-5 concurrent with 075973)
   075976 - Unlawfully carrying a handgun (3-5 concurrent with 075973)
   075974 - Possession Class D - Guilty - file

6. (a) What was your plea? (Check one)
   (1)    Not guilty ☒          (3)    Nolo contendere (no contest) ☐
   (2)    Guilty ☐              (4)    Insanity plea ☐
   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or
   charge, what did you plead guilty to and what did you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒        Judge only ❑

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☒    No ❑

8.  Did you appeal from the judgment of conviction?

Yes ☒    No ❑

9.  If you did appeal, answer the following:

(a) Name of court: _____ Supreme Judicial Court

(b) Docket or case number (if you know): sjc - 05836

(c) Result: _____ Conviction Affirmed

(d) Date of result (if you know): _____ 2/20/96

(e) Citation to the case (if you know): _____ 422 Mass 111, 661 N.E.2d 617(1996)

(f) Grounds raised: _____

1. Insufficient evidence to supporta finding of guilt beyond a reasonable doubt as to first degree murder. )Whether or not a search and seizure was justified under Article 14 of the Massachusetts Declaration of Rights and U.S.Constitution.

(g) Did you seek further review by a higher state court?    Yes ❑    No ☒

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

(h) Did you file a petition for certiorari in the United States Supreme Court?    Yes ❑    No ☒

If yes, answer the following:

(1) Docket or case number (if you know): _____

Page 4

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☒  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: __Suffolk Superior Court, Boston__

(2) Docket or case number (if you know): __079573 - 079576__

(3) Date of filing (if you know): __May 19, 1997__

(4) Nature of the proceeding: __Motion for New Trial__

(5) Grounds raised: (1) __Ineffective assistance of appellate counsel in violation of Article 12 of the Massachusetts Declaration of Rights and Sixth Amendment to the U.S. Constitution.__

__(2) Commonwealth exercised peremptory challenge of seated juror who was a member of a protected class without a race neutral justification in violation of Article 12 of the Mass. Dec. Rights and 6th and 14th Amendments to the U.S. Constitution.__

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐    No ☒

(7) Result: ____Motion denied__

(8) Date of result (if you know): __7/25/01__

(b) If you filed any second petition, application, or motion, give the same information:    N/A

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?        Yes ❏    No ❏

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:     N/A

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?        Yes ❏  No ❏

    (7) Result: _____

    (8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

    (1)  First petition:        Yes ☒    No ❏

    (2)  Second petition:    Yes ❏    No ❏

    (3)  Third petition:      Yes ❏    No ❏

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: _Petitioner was deprived of his 6th and 14th Amendment rights by Commonwealth's impermissible use of a peremptory challenge against a seated juror._

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): During impanelment of petitioner's trial an African American woman was selected to the petit jury. The Commonwealth challenged her by means of a peremptory challenge. The defendant objected because she was the sole black member of the seated jury. The trial judge did not permit nor did the Commonwealth offer a race neutral justification for the challenge. This conduct deprived the petitioner of his right to a fair and impartial jury and the equal protection of the law in violation of the 6th and 14th Amendments to the U.S. Constitution.

(b) If you did not exhaust your state remedies on Ground One, explain why: _Petitioner did exhaust. Appeal was taken to the Single Justice of the S.J.C. in accordance with M.G.L. Ch.278 sec. 33E._

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: _Ineffective counsel failed to raise this issue on direct appeal._

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?     Yes ☒    No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Motion for New Trial_

Name and location of the court where the motion or petition was filed: _Suffolk Superior Court, Boston, MA_

Docket or case number (if you know): __079573_____

Date of the court's decision: _____7/25/01_____

Result (attach a copy of the court's opinion or order, if available): Motion denied _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ❑   No ☒

(4) Did you appeal from the denial of your motion or petition?

    Yes ☒   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☒   No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Supreme Judicial Court for

Suffolk County, Boston, MA _____

Docket or case number (if you know): _SJ 2001-0424_____

Date of the court's decision: ___October 26, 2004_____

Result (attach a copy of the court's opinion or order, if available): Denial of motion affirmed.

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____

_____

_____

(e) **Other Remedies**: Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

  Motion for Reconsideration to the Single Justice _____

_____

GROUND TWO: _Insufficient evidence to support a conviction of first_

_degree murder, murder beyond a reasonable doubt_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Evidence at trial did not establish that the petitioner
committed an act that caused the death of the deceased. In
addition, the evidence did not establish that Mr. Williams
knew of or shared a criminal intent with a joint venturer.

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____ Petitioner did exhaust _____

_____

_____

(c)  **Direct Appeal of Ground Two:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☒   No ☐

   (2) If you did **not** raise this issue in your direct appeal, explain why: _____

   _____

   _____

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   Yes ☐    No ☒

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   (3) Did you receive a hearing on your motion or petition?

   Yes ☐    No ☐

   (4) Did you appeal from the denial of your motion or petition?

   Yes ☐    No ☐

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

   Yes ☐    No ☐

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _____

   _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ❑

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ❏  No ❏

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    _____

    (3) Did you receive a hearing on your motion or petition?

        Yes ❏  No ❏

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❏  No ❏

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❏  No ❏

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    _____

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

    _____

    _____

    _____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

    _____

    _____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c)  **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑    No ❑

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

    state trial court?       Yes ❑  No ❑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑    No ❑

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❑    No ❑

Page 12

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏  No ❏

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?      Yes ☒  No ❏

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____ No _____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?      Yes ❏  No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    Yes ❏    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: _____

_____

(d) At sentencing: _____

_____

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: Joseph F. Krowski, Esquire, 30 Cottage Street, Brockton, MA 02301

(g) On appeal from any ruling against you in a post-conviction proceeding: _____
Joseph F. Krowski, Esquire, 30 Cottage Street, Brockton, MA 02301

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ❏    No ☒

Page 14

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ❑  No ❑

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* _S.J.C. on direct appeal affirmed Petitioner's conviction on 2/20/96. 90 days from 2/20/96 is 5/20/96. One year from 5/20/96 is 5/20/97. Motion for New Trial was filed by Petitioner pro se on 5/19/97 by handing petition to appropriate prison personnel for mailing. (Prison mailbox rule). Motion for New Trial denied by Superior Court Judge 7/25/01. Appeal to Single Justice of SJC. Decision affirming denial of motion for new trial issued 10/26/04. Motion for Reconsideration to Single Justice filed 11/24/04. Motion for Reconsideration denied on 12/15/04. Notice received 12/16/04. Petition for habeas filed on 12/17/04 within one year statute of limitations with excluded periods._

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Page 15

Therefore, petitioner asks that the Court grant the following relief: that his conviction of first degree murder be overturned and a required finding of not guilty enter.    Alternatively, order a new trial.

or any other relief to which petitioner may be entitled.

*[signature: Joseph F. Krowski]*
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was ~~placed in the prison mailing system on~~ hand delivered to the Clerk's Office on 12/17/04 _____ (month, date, year).

Executed (signed) on 12/17/04 _____ (date).

x *[signature: LeRoy Williams]*
Signature of Petitioner

---

*(...continued)
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

SJC-05836

### COMMONWEALTH vs. LEROY WILLIAMS.

Suffolk.    November 8, 1995. - February 20, 1996.

Present: Liacos, C.J., Wilkins, Abrams, O'Connor, & Greaney, JJ.

Evidence, Admissions and confessions. Practice, Criminal, Motion
to suppress, Required finding, Capital case. Search and
Seizure, Threshold police inquiry, Arrest. Constitutional
Law, Admissions and confessions, Search and seizure, Arrest.
Firearms. Homicide. Joint Enterprise. Malice. Intent.

Indictments found and returned in the Superior Court
Department on July 5, 1989.

A pretrial motion to suppress evidence was heard by
Elizabeth J. Dolan, J., and the cases were tried before John F.
Murphy, Jr., J.

Earl Howard for the defendant.
Kelly Ann Downes, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The defendant, Leroy Williams, appeals from his

convictions of murder in the first degree and unlawful carrying

of a firearm.[1] The defendant also appeals from the denial, after

---

[1] The defendant also was convicted of unlawful possession of a
Class D controlled substance (marihuana) and trafficking in
cocaine. He limits his arguments on appeal to the convictions of

a hearing, of his motion to suppress all evidence obtained as the result of his arrest and the denial of his motion for required findings of not guilty.  We conclude that the conviction for murder in the first degree should be affirmed.  We decline to exercise our extraordinary power under G. L. c. 278, § 33E (1994 ed.), to enter a verdict of a lesser degree of guilt or order a new trial.  We also affirm the conviction for unlawful carrying of a firearm.

We set forth the facts in the light most favorable to the Commonwealth.  Commonwealth v. Nichypor, 419 Mass. 209, 210 (1994).  Commonwealth v. Salemme, 395 Mass. 594, 595 (1985).  On June 26, 1989, the victim, Leroy Foster, died from multiple gunshot wounds to the chest and arm.  The fatal shooting took place at about 11:15 A.M.  Gunshots were heard by three witnesses, Sheba Brown, Kevin Boswell, and Fitz Lindo, who saw the defendant and another man flee the building immediately after the shots were fired.  Both Boswell and Lindo testified that the

---

murder in the first degree and unlawful carrying of a firearm.  The motion for required findings of not guilty similarly referenced only those charges.  As the defendant makes no argument as to the drug convictions in his appellate brief, we review only the convictions for first degree murder and unlawful carrying of a firearm.  See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) ("The appellate court need not pass upon questions or issues not argued in the brief").

3

defendant was carrying a gun which Boswell described as large, approximately seven to eight inches long, silver with a black handle. Boswell and Lindo saw the defendant throw something over a fence into an empty lot.

At the time of the shooting, Boston police Officers Paul C. McLaughlin and Daniel Fagan were on patrol in a two-man cruiser travelling inbound on Washington Street toward Codman Square in the Dorchester section of Boston at a slow rate of speed. On reaching the intersection of Washington and Aspinwall Streets, Officer McLaughlin observed two black males running at "sprint pace" down Washington Street. He observed that bystanders had turned toward the runners and were pointing at them. He saw the defendant pull a white shirt over his head and discard it.

---

There is some dispute as to whether Lindo testified that the second man also carried a gun. The transcript represents the testimony as follows: "First I saw a brown guy with a gun; and, then, after a split second, I saw another guy, a dark guy." The Commonwealth asserts this was a typographical error by the court reporter who meant to type "a dark guy." This is the only evidence that the second man carried a gun.

The police later conducted an extensive search of the empty lot identified by the witnesses but did not recover the gun.

This action also was observed by Mia Tuwen who was at work in the Codman Square Cleaners at 563 Washington Street. She saw the man take off his shirt and discard it on the ground near a mailbox in front of her store. She later identified the shirt for police. The shirt was tested for the presence of human blood and found to contain type A human blood, the victim's blood type.

4

McLaughlin also noticed that this man was sweating and had a strained expression on his face.

*Pursuit STARTED*

As the officers began to follow the men, an unidentified white, middle-aged man approached the cruiser and handed Officer Fagan a beeper, stating, "I don't know what happened but one of them dropped this." The officers continued to follow the men but did not activate the cruiser's lights or siren, nor call to the men to stop. Neither man turned to look at the cruiser. On Hopestill Street, the officers observed the defendant run behind a house. Officer Fagan got out of the cruiser to investigate while McLaughlin drove the cruiser around the corner to Talbot Avenue. Officer McLaughlin then stopped the cruiser and proceeded to investigate on foot. He observed the defendant, who he now noticed was covered with blood, attempt to scale a chain link fence. McLaughlin identified himself as a police officer and ordered the defendant to stop. The defendant retreated back through the yards. At this point, Officer McLaughlin drew his service revolver and followed the defendant. He located the defendant behind a blue house and again ordered him to stop and get on the ground. The defendant stated, "I didn't mean it, I

_____

Al Camarata, an employee of Metro Media Paging, stated that the beeper was leased to Leroy A. Foster, the victim.

5

didn't mean it, I don't want to go back to prison."∜  The

defendant also stated that he had been shot but the officer

observed no wounds.  As Officer Fagan arrived, the defendant got

up and attempted to run past Officer McLaughlin.  Both officers

pushed the defendant to the ground and attempted to handcuff him

as he resisted.

While handcuffing the defendant, the officers received a

radio broadcast reporting a confirmed shooting at 544 Washington

Street, approximately 200 to 400 yards from where they had

stopped the defendant.  In response to Officer Fagan's request

for a description of the suspects, the dispatcher described a

short, dark-skinned, black male and a tall, light-skinned, black

male, shirtless and covered with blood.  Fagan reported that the

latter description matched that of an individual they now had in

custody and was instructed to bring the suspect back to the scene

of the shooting.

On route to 544 Washington Street, the defendant was read

the warning required by Miranda v. Arizona, 384 U.S. 436 (1966),

and shown to the civilian witnesses.  See Commonwealth v. Bumpus,

362 Mass. 672, 675 (1972), judgment vacated and remanded on other

---

∜The latter part of the defendant's statement, "I don't want
to go back to prison," was excluded at trial but not at the hearing
on the motion to suppress.

attorney.  The analysis revealed the presence of human blood but the blood type could not be determined.

Later investigation at the scene of the shooting revealed all windows, except those facing the front of the apartment, were shut and locked.  There was no practical means of leaving the building other than the front door and no persons were found in the hallway or corridors of either building.

An autopsy of the victim revealed that he had sustained three gunshot wounds, two to the chest and one to the upper right arm.  The first chest wound appeared to be a distance wound. From observation of stippling around the second wound, the medical examiner determined that this wound was inflicted at close range.  The medical examiner determined that either chest wound was fatal.

I. Motion to suppress.  The defendant sought to suppress all physical evidence and his statements.  He argued that the stop and subsequent arrest were unlawful and in violation of his rights under art. 14 of the Massachusetts Declaration of Rights.

---

Article 14 of the Massachusetts Declaration of Rights provides greater substantive protection to a criminal defendant than does the Fourth Amendment to the United States Constitution. We view the contested stop and subsequent arrest in light of the more stringent standards of art. 14 with the understanding that, if these standards are met, so too are those of the Fourth Amendment. See Commonwealth v. Welch, 420 Mass. 646, 650 n.3 (1995).

The judge denied the defendant's motion to suppress stating that the police officers had "specific and articulable facts to warrant the initiation of a pursuit" and that the officers' suspicion reasonably escalated so that at the time of confrontation between Officer McLaughlin and the defendant "a Terry-type stop and frisk, at the very least, was warranted." See Terry v. Ohio, 392 U.S. 1 (1968).

The Commonwealth bears the burden of demonstrating that the police officers acted lawfully in pursuing and seizing the defendant. Commonwealth v. Shields, 402 Mass. 162, 164 (1988). The degree of suspicion the police reasonably harbor must be proportional to the level of intrusiveness of the police conduct. Commonwealth v. Moses, 408 Mass. 136, 141 (1990). Commonwealth v. Borges, 395 Mass. 788, 794 (1985).

We first consider whether the confrontation in the back yards at Aspinwall Street was a permissible investigatory stop. See Commonwealth v. Willis, 415 Mass. 814, 817 (1993) (to conduct threshold inquiry, police officer must have reasonable suspicion, based on specific, articulable facts and reasonable inferences

---

In his brief, the defendant does not state what standard we should adopt or in what regard our cases on stop and frisk differ from Federal cases but cites both Federal and State cases in support of his claim. We, therefore, analyze both art. 14 and Fourth Amendment cases.

that the defendant has committed, is committing, or was about to commit crime). See also Terry v. Ohio, supra. Review of the officers' conduct in effectuating a threshold inquiry requires a two-part analysis:  first, whether it was permissible to initiate investigation and second, whether the scope of the seizure was justified by the situation.  See Terry v. Ohio, supra at 19-20. See Commonwealth v. Helme, 399 Mass. 298, 300 (1987); Commonwealth v. Silva, 366 Mass. 402, 405 (1974).  We view the facts and circumstances as a whole in assessing the reasonableness of the officers' conduct.  See Commonwealth v. Fraser, 410 Mass. 541, 545 (1991) ("a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief"); Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981).

The defendant focuses his argument on the first prong of the two-part analysis.  He argues that the police had no reasonable and articulable suspicion justifying pursuit, which the defendant contends initiated when the police began to follow him in the cruiser.  We do not agree.  When the police first spotted the defendant running and decided to follow in their cruiser, they were merely observing rather than pursuing the defendant.  No degree of suspicion, reasonable or otherwise, was

constitutionally required for the police to commence

surveillance.  Michigan v. Chesternut, 486 U.S. 567, 576 (1988)

(police not required to have particularized and objective basis

for suspecting criminal activity to follow in car).  The police

conduct prior to chasing on foot was not pursuit as it would not

have communicated to the reasonable person an attempt to capture

or otherwise to intrude on the defendant's freedom of movement.

See id. at 575 (observation without activation of siren or

flashers, without command to halt, without display of weapons,

and without operation of car in aggressive manner to block

defendant's course or otherwise control the direction or speed of

his movement, is not pursuit). Our case law is consistent with

the Federal law on this point.  See Commonwealth v. Harkess, 35

Mass. App. Ct. 626, 629 (1993) (in absence of seizure, there is

no need for the police to justify their conduct by showing a

reasonable suspicion of criminal activity); Commonwealth v.

Moore, 32 Mass. App. Ct. 924, 924 (1992), and cases cited

(surveillance does not implicate constitutional protections).

*HAD ALREADY STARTED*

   Pursuit for constitutional purposes began when the officers

left the police cruiser and began to chase the suspects on foot.

At this time, the police were attempting to stop the defendant to

effectuate a threshold inquiry.  We conclude that the police then

possessed the requisite reasonable suspicion necessary to justify
a threshold inquiry. The defendant was running down a busy
street at sprint pace in broad daylight. The police could
properly consider that the defendant's flight predated the
officers' pursuit, rather than being in response to it. See
Michigan v. Chesternut, supra at 576; Commonwealth v. Harkess,
supra at 630 (appropriate for officers to investigate when
individual flees without any show of authority by the police
officers). The defendant was sweating, had a strained expression
on his face, and discarded his shirt without breaking pace. The
police, without solicitation, received a beeper dropped by the
defendant (or his unnamed joint venturer). The defendant then
took evasive action by running through back yards and scaling
chain link fences. It was appropriate for the police to pursue
the defendant in order to effectuate a threshold inquiry.

We next turn to the second prong, whether the scope of the
seizure was justified by the situation. We conclude that it was
appropriate for Officer McLaughlin to approach the defendant with
his gun drawn. An officer is entitled to take reasonable steps
to ensure his safety. Such steps do not automatically turn a
stop into an arrest. See Commonwealth v. Fitzgibbons, 23 Mass.
App. Ct. 301, 305 (1986). When the defendant attempted to flee,

the officers physically restrained him.  It is not disputed that

at this point the defendant was seized for constitutional

purposes. [10]/  See Commonwealth v. Fraser, 410 Mass. 541, 543

(1991), citing United States v. Mendenhall, 446 U.S. 544, 554

(1980) (seizure occurs "only if, in view of all the circumstances

surrounding the incident, a reasonable person would have believed

that he was not free to leave").  What is disputed is whether

this seizure was an investigatory stop or an arrest.  The

resolution of this question depends on the particular facts of

the case.  Commonwealth v. Fitzgibbons, 23 Mass. App. Ct. 301,

307 (1986).  It is not dispositive that the defendant was

handcuffed.  See Commonwealth v. Andrews, 34 Mass. App. Ct. 324,

329 (1993); Commonwealth v. Pandolfino, 33 Mass. App. Ct. 96, 98

(1992).  See also United States v. Bautista, 684 F.2d 1286, 1289-

1290 (9th Cir. 1982), cert. denied, 459 U.S. 1211 (1983); United

States v. Laing, 889 F.2d 281, 285-286 (D.C. Cir. 1989), cert.

---

[10]/There is no basis for the defendant's contention that he was
seized prior to the confrontation with the officer as the defendant
was unaware of the officers' pursuit.  There was neither physical
force nor an assertion of authority that effectuated a stop.  See
California v. Hodari D., 499 U.S. 621, 627-629 (1991) (seizure does
not occur during a chase that does not produce the suspect's stop).
See also Commonwealth v. Cook, 419 Mass. 192, 199-200 (1994) (no
seizure unless reasonable person would have believed he was not
free to leave).  Under either the State of Federal case law, the
defendant was not seized prior to the confrontation.

denied sub nom. Martin v. United States, 494 U.S. 1008 (1990).

Several factors must be considered in determining whether the

scope of the seizure was justified, including the length of the

encounter, the nature of the inquiry, the possibility of flight,

and the danger to the safety of the officers.

The defendant was immediately transported to the crime scene

for identification and thus was not unduly detained.  See

Commonwealth v. Salerno, 356 Mass. 642, 646-647 (1970), quoting

Ker v. California, 374 U.S. 23, 34 (1963) ("An expeditious

collateral inquiry which might result in the suspects' arrest or

prompt release is not unreasonable when done to meet 'the

practical demands of effective criminal investigation and law

enforcement'"); Commonwealth v. Crowley, 29 Mass. App. Ct. 1, 5

(1990) (transportation back to crime scene did not unduly prolong

detention since only twenty minutes was involved).  The defendant

posed a substantial flight risk given that he tried to flee after

the officer ordered him to stop.  He also posed a significant

safety risk.  The officers saw that the defendant was covered in

blood and could ascertain that he lied about having been shot.

It was reasonable for the officers to be concerned that the

defendant might be armed and might pose a risk to their safety,

as well as the public's.  Officers McLaughlin and Fagan were

justified in restraining the defendant's liberty of movement while they conducted a threshold inquiry.  Such restraint, which was limited in duration and necessary to complete the inquiry, does not turn a valid investigatory stop into an unlawful arrest. See Commonwealth v. Crowley, 29 Mass. App. Ct. 1, 4-5 n.6 (1990) ("Contrary to the defendant's suggestion, the criteria of 'forcible detention and restriction of movement — do not serve to distinguish an arrest from an investigatory stop.  A complete restriction on liberty of movement occurs in the typical investigatory stop'").  On consideration of these factors, we conclude that the police did not exceed the scope of a lawful investigatory stop when they restrained the defendant.

At the point when the officers had successfully restrained the defendant, they received the radio transmission confirming that a shooting had taken place 200 to 400 yards from where they confronted the defendant.  This was sufficient to supply probable cause to arrest.[1/]  At or near the scene of the shooting, the officers had seen bystanders staring at and pointing to the

----

[1/] Probable cause to arrest exists where the facts and circumstances in the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed.  See Commonwealth v. Roman, 414 Mass. 642, 643 (1993); Commonwealth v. Garcia, 34 Mass. App. Ct. 386, 393 n.8 (1993).

defendant and his companion.  One bystander informed the officers

that the suspects dropped a "beeper," an accoutrement of the drug

trade.  The officers witnessed the suspects run and dart

evasively through back yards and the defendant discard his shirt.

The defendant was covered in blood and when cornered by the

officers stated "I didn't mean it.  I didn't mean it.  I don't

want to go back to prison."  He then lied about being shot and

attempted to flee.  After receiving the radio transmission

confirming a shooting nearby, it was proper for the officers to

arrest the defendant on suspicion of involvement in that

shooting.[12]/

Because the arrest was proper, the police were authorized to

search the defendant's person for weapons, contraband, and

---

[12]Because we conclude that the police had probable cause to
arrest at the time of the radio transmission, we need not discuss
the question whether, as the Commonwealth contends, the arrest was
not effectuated until after the defendant was transported back to
the crime scene and identified by the civilian witnesses.  The
Commonwealth argues that, although the police had probable cause
for arrest at the time of the radio transmission, they did not
arrest the defendant until after he had been transported back to
the crime scene, read the Miranda warnings, and identified by the
civilian witnesses.  See Commonwealth v. Bumpus, 362 Mass. 672, 675
(1972), judgment vacated and remanded on other grounds, 411 U.S.
945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), reviewed on
petition for habeas corpus sub nom. Bumpus v. Gunter, 452 F. Supp.
1060 (D. Mass. 1978), denial of writ aff'd, 635 F.2d 907 (1st Cir.
1980), cert. denied, 450 U.S. 1003 (1981) (defendant may be shown
to witnesses for identification prior to arrest).

evidence.  See G. L. c. 276, § 1 (1994 ed.); <u>Commonwealth</u> v.

<u>Petrillo</u>, 399 Mass. 487, 489 (1987).  It also was proper to seize

as evidence the clothing and shoes worn by the defendant at the

time of arrest.  <u>Commonwealth</u> v. <u>Freiberg</u>, 405 Mass. 282, 299,

cert. denied, 493 U.S. 940 (1989).  We conclude that there was no

error in the trial judge's denial of the defendant's motion to

suppress.

II. <u>Motion for required findings of not guilty</u>.  The

defendant moved for required findings of not guilty as to the

murder and unlawful carrying of a firearm charges at the end of

the Commonwealth's case and at the end of all evidence.  Both

motions were denied.  The defendant asserts that the denials were

in error.

A motion for a required finding of not guilty will be

allowed only where the trial judge finds that "the evidence is

insufficient as a matter of law to sustain a conviction on the

charge."  Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979).  Accord

<u>Commonwealth</u> v. <u>Nadworny</u>, 396 Mass. 342, 353-354, cert. denied,

447 U.S. 904 (1985).

A. <u>The unlawful carrying of a firearm</u>.  To prove unlawful

carrying of a firearm, the Commonwealth must prove that the

defendant knowingly possessed a loaded or unloaded firearm

17

without a license.  G. L. c. 269, § 10 (a) (1994 ed.).  The

defendant argues that there was insufficient evidence to convict

him of the unlawful carrying of a firearm because there was "no

evidence that the firearm claimed to be in the possession of the

defendant . . . was capable of being fired or was fired at all."

The defendant's argument is without merit.  The jury could

properly have considered eyewitness testimony that the defendant

had a firearm in his possession, even in the absence of the

recovery of such a firearm.  Commonwealth v. Lopez, 10 Mass. App.

Ct. 351, 354 (1980).  It is sufficient that a gun was fired and

the defendant was seen fleeing the scene within seconds of the

gunshots.  A conviction may be properly based entirely on

circumstantial evidence so long as that evidence establishes the

defendant's guilt beyond a reasonable doubt.  Commonwealth v.

Martino, 412 Mass. 267, 272 (1992).  See Commonwealth v. Noble,

417 Mass. 341, 346 (1994) (there need not be direct evidence to

shooting).  There was no error in the judge's denial of the

defendant's motion for a required finding of not guilty as to the

unlawful carrying of a firearm charge.

     B. Murder.  The Commonwealth presented a joint venture

theory of murder.  The three elements required to prove a joint

venture beyond a reasonable doubt are that each defendant was

(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary.  See Commonwealth v. Clarke, 418 Mass. 207, 214 (1994); Commonwealth v. Longo, 402 Mass. 482, 486 (1988). Viewed in a light most favorable to the Commonwealth, a rational jury could have determined that the Commonwealth proved each of these three elements.  The defendant admitted to being present at the scene of the crime.  He and a shorter, darker-skinned man entered the building together and fled together.  A rational jury could infer from this that they were available and willing to help each other if necessary.  Joint venture may be proved by circumstantial evidence, including evidence of flight together. Commonwealth v. Santos, 402 Mass. 775, 787 (1988).   The jury could further infer intent to commit the murder from the carrying of the firearm and the wounds themselves.  "Direct evidence of who shot the victim[ ] 'is not required where, as here, there is strong circumstantial evidence that one of the [assailants] shot' the victim[ ]."  Commonwealth v. Chipman, 418 Mass. 262, 268 (1994), quoting Commonwealth v. Cohen, 412 Mass. 375, 381 (1992). That it is possible that someone else fired the fatal shots does not mean that the jurors were left to speculate as to the

defendant's guilt.  See <u>Commonwealth</u> v. <u>Doucette</u>, 408 Mass. 454,

462 (1990).  We have held that "[i]n order to convict on

circumstantial evidence, it is not necessary to show that it was

not in the power of any other person than the defendant to commit

the crime." <u>Cramer</u> v. <u>Commonwealth</u>, 419 Mass. 106, 112 (1994),

quoting <u>Commonwealth</u> v. <u>Fancy</u>, 349 Mass. 196, 200 (1965).  "The

relevant question is whether the evidence would permit a jury to

find guilt, not whether the evidence requires such a finding."

<u>Commonwealth</u> v. <u>Lydon</u>, 413 Mass. 309, 312 (1992), quoting

<u>Commonwealth</u> v. <u>Brown</u>, 401 Mass. 745, 747 (1988).

   To prove murder beyond a reasonable doubt, the Commonwealth

must show that the defendant unlawfully killed a human being with

malice aforethought.  G. L. c. 265, § 1 (1994 ed.).  Accord

<u>Commonwealth</u> v. <u>Campbell</u>, 378 Mass. 680, 686 (1979).  Malice

aforethought describes the particular mental state accompanying a

homicide which makes the act murder.  <u>Id</u>.  See <u>Commonwealth</u> v.

<u>Ferreira</u>, 417 Mass. 592, 597 n.7 (1994) ("any intentional killing

of a human being without legal justification or excuse, with no

extenuating circumstances sufficient in law to reduce the crime

from murder to manslaughter, is malicious within the meaning of

malice aforethought").  "[M]alice may be found by inference from

the defendant's commission of an act which a reasonably prudent

person would know is likely to result in the death of another."
Commonwealth v. Moore, 408 Mass. 117, 134 n.9 (1990).

To prove that the murder was murder in the first degree, the
Commonwealth proceeded on the theory of deliberate premeditation.
To satisfy its burden that the murder was the product of
deliberately premeditated malice aforethought, the Commonwealth
must show that the defendant's decision to kill was the product
of "cool reflection." Commonwealth v. Davis, 403 Mass. 575, 582
(1988). "'Cool reflection' merely requires that 'the purpose
[be] resolved upon and the mind determined to do it before the
blow is struck[;] then it is, within the meaning of the law,
deliberately premeditated malice aforethought." Id., quoting
Commonwealth v. Tucker, 189 Mass. 457, 494 (1905). No particular
period of reflection is required. Commonwealth v. Chipman, supra
at 269, and cases cited therein. Our case law recognizes that a
plan to murder may be formed within a few seconds. Id.

Viewed in the light most favorable to the Commonwealth, the
evidence allows a rational jury to have inferred that the
defendant acted with deliberate premeditation in bringing a
loaded revolver to the victim's apartment and firing three shots
into the victim from varying distances. The use of a firearm in
the killing is sufficient to support a verdict of murder in the

first degree based on deliberately premeditated malice aforethought. Commonwealth v. Bourgeois, 404 Mass. 61, 63-64 (1989). Evidence that the defendant brought a gun with him to the scene of a planned crime is evidence of planning, which included preparation for using the gun. Commonwealth v. Stewart, 398 Mass. 535, 541 (1986). The fact that three shots were fired additionally supports the verdict. Commonwealth v. Bourgeois, supra, citing Commonwealth v. Fernette, 398 Mass. 658, 669 (1986) ("The facts that the victim was shot twice and that [the defendants] carried loaded handguns, coupled with fair inferences from the circumstances of the shooting, support a finding of sufficient reflection to constitute deliberately premeditated murder"). Commonwealth v. Stirling, 351 Mass. 68, 75 (1966) ("The [weapon] not being automatic but requiring six separate hard pulls to fire the six shots, and the wounds being in the back of the victim's head without a sign of there having been a struggle, the jury could properly find 'deliberately premeditated malice aforethought'"). We conclude that there was sufficient evidence for a jury to determine that the defendant acted with deliberately premeditated malice aforethought. The judge correctly denied the defendant's motion for a required finding of not guilty.

III. <u>Relief under G. L. c. 278, § 33E</u>.  The defendant makes

two arguments not raised below which we consider pursuant to

G. L. c. 278, § 33E.  First, the defendant raises the issue of

the reliability of the unidentified man who supplied Officer

Fagan with the beeper.[13]  There were no findings of fact as to

the reliability of the bystander or the extent the police relied

on the evidence he volunteered.  We consider the issue under

G. L. c. 278, § 33E, only to determine whether there was serious

error that would create a "substantial likelihood of a

miscarriage of justice."  See <u>Commonwealth</u> v. <u>Viriyahiranpaiboon</u>,

412 Mass. 224, 230 (1992) (defendant waives right to appeal on

grounds not raised before judge; in such circumstances, test is

whether there was an error that created a substantial likelihood

of a miscarriage of justice).  On this record, we conclude that

the beeper was sufficiently reliable to be considered in

determining whether the police harbored reasonable suspicions

justifying a threshold inquiry and that, therefore, there is no

---

[13] While the beeper is more relevant to the conviction for
trafficking in cocaine, see note 1, <u>supra</u>, we consider the
defendant's arguments under G. L. c. 278, § 33E, as they relate to
the conviction for murder in the first degree.  The beeper is
relevant as it was a factor in the motion judge's consideration
whether the police had reasonable suspicion justifying the pursuit
and threshold inquiry that led to the defendant's arrest for the
murder.

substantial likelihood of a miscarriage of justice.  The basis of
knowledge, an eyewitness account, was clear and constitutionally
sufficient.  Commonwealth v. Fleurant, 2 Mass. App. Ct. 250, 254
(1974) ("[e]vidence that the informant was an eye witness is a
constitutionally sufficient demonstration of the source of his
information").  Reliability was supported by the officers'
corroborative observations which may substitute for knowledge of
the informant's reliability.  See Commonwealth v. Willis, 415
Mass. 814, 818 (1993); Commonwealth v. Lyons, 409 Mass. 16, 19
(1990).  See also Spinelli v. United States, 393 U.S. 410 (1969);
Aguilar v. Texas, 378 U.S. 108 (1964).  There was no substantial
likelihood of a miscarriage of justice as the beeper was
sufficiently reliable.[19]

Secondly, the defendant argues that, because he smoked
marihuana while with the victim, the question whether he was
impaired and unable to form shared intent should have been
presented to the jury.  See Commonwealth v. Ferreira, 417 Mass.
592, 595 (1994).  At trial, the defendant made no request for a
jury instruction on intoxication.  The only evidence of
impairment presented at trial was the defendant's testimony that

---

[19]We note that the beeper was only a small portion of the
accumulating evidence that underlaid the reasonable suspicion
justifying a threshold inquiry by the police.

the victim gave him marihuana and he smoked it.  No testimony was
offered as to the amount ingested or inhaled or of an impairment
due to the ingestion or inhalation.  The evidence of impairment,
thus, was either nonexistent or at best minimal.  There was no
substantial likelihood of a miscarriage of justice from the
absence of an instruction on impairment.  See Commonwealth v.
Tano, 400 Mass. 296, 306-307 (1987) (defendant did not present
defense of intoxication; there was no notice to the judge that
intoxication or the defendant's mental capacity was an issue;
held, there was no error, much less a substantial likelihood of a
miscarriage of justice, in judge's failure to  instruct jury sua
sponte on effect of voluntary intoxication).

    We have considered the entire case on the law and the
evidence, see G. L. c. 278, § 33E, and we conclude that the
interests of justice do not require entry of a lesser degree of
guilt as to the murder conviction or a new trial.

                                Judgments affirmed.

COMMONWEALTH OF MASSACHUSETTS

DOCKET NO: sj-2001-0424

COMMONWEALTH

v.

LEROY WILLIAMS

AFFIDAVIT

NOW COMES THE DEFENDANT IN THE ABOVE ENTITLED MATTER AND AFFIRM THE FOLLOWING UNDER THE PAINS AND PENALTIES OF PERJURY:

1. I AM THE PRESENTLY INCARCERATED AT M.C.I.SHIRLEY MED.

2. IN MAY 1997 I WAS INCARCERATED AT CEDER JUNCTION M.C.I. WALPOLE, DURING THAT PERIOD, A MOTION FOR A NEW TRIAL WAS PUT TOGETHER FOR ME PRO SE.

3. ON MAY 19th 1997, I MAILED A COPY OF THE MOTION FOR NEW TRIAL TO THE SUPERIOR COURT OF MASSACHUSETTS DURING THE AM CHOW HALL PERIOD.

4. I ALSO HAD RECORDS OF THIS UP INTILL APRIL 2004, AT WHICH TIME THERE WAS A MAJOR SHAKE DOWN AND A LARGE AMOUNT OF MY LEGAL RECORDS CAME UP MISSING.

5. I HEREBY STATE UNDER THE PAINS A PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE.

DATED 11/14/04

LEROY WILLIAMS
1218 SHIRLEY MED
SHIRLEY MASS 01464

35

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                  SUPERIOR COURT DEPART.
                                              IND. NOS. 079573-6

## COMMONWEALTH

## V.

## LEROY WILLIAMS

## MOTION FOR A NEW TRIAL PURSUANT TO
## M.R.C.P. 30 (A)(B)

Now comes the defendant, Leroy Williams, and respectfully
moves this Honorable Court to grant his motion for a new trial
pursuant to M.R.C.P. 30 (A)(B) because he was denied effective
assistance of direct appeal counsel because he did not raise
the issue that defendant was denied a fair and impartial trial
because the prosecutor struck a black juror and did not give
a race-neutral reason after defense counsel objected and the
court did not make a ruling in violation of the Sixth, Fourteen-
the, Due Process Clause of the Fifth, Fourteenth, and Equal
Protection Clause of the Fourteenth Amendment to the United
States Constitution and Massachusetts Constitution, Declaration
of Rights, Art. 12.  In support, defendant states:

1)  He is the defendant in the above-numbered indictments;

2)  A Suffolk County Grand Jury returned an indictment for
murder on the first Monday of July, 1989 (See Ex. A).  The Grand
Jury also returned indictments for unlawful possession of Class
D controlled substance (079574) (See Ex. B); trafficking in
cocaine (079575) (See Ex. B); and unlawfully carrying firearm
on person (handgun) (079576) (See Ex. B);

3)  A jury returned guilty verdicts on each indictment April 13,
1990 for murder in the first degree (079573) and sentenced to

2

a natural life sentence and concurrent sentences for the other three indictments;

4)  A Notice of Appeal was filed April 17, 1990;

5)  Attorney Earl Howard was appointed to represent defendant on direct appeal;

6)  The Supreme Judicial Court affirmed the conviction February 20, 1996 (See Commonwealth v. Williams, 422 Mass. 111 (1996)) (Ex. C);

7)  Earl Howard provided ineffective assistance of counsel on direct appeal because he did not raise Batson/Soares violation despite the fact that trial counsel had properly preserved the violation.  The prosecutor challenged juror 16-11 (Tr. 1-66) Ex. D) Counsel attempted to object immediately by stating, "I would like to go on the record and call to the Court's attention that the defense objects to the challenge -- THE CLERK: Okay.  Your Honor?  Side bar, please?  THE COURT:  Just make the challenges, please and return to your seats. MS. AMES: Thank you.  MR. DOYLE:  I'll take an exception."  The Court finally gave defense counsel an opportunity to put his challenge on the record: MR. DOYLE:  For the record, the defense objected (Tr. 1-70) to the Commonwealth's challenge of Juror No. 12. It was a black lady.  I believe it was Juror 16-1 -- strike that -- 16-11.  I base that objection on that there was no valid reason why that juror shouldn't be selected.  It's obvious that the defendant is a minority.  There were very few minority persons in the venire, and the defendant objects.  THE COURT:  The objection is noted. MS. AMES:  May I -- THE COURT: No. (Tr. 1-71) (Ex. D).

3

The appellate counsel should have raised this violation since the juror was struck because she was black, defendant is black, and the prosecutor did not give a race-neutral explanation, and the court did not rule that the juror was struck for reasons other than race.  See Batson v. Kentucky, 476 U.S. 79, 85 (1986); Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, 515 (1979); Purkett v. Elem, 115 S.Ct. 1769, 1770-1771 (1995); Commonwealth v. Burnett, 418 Mass. 769, 771 (1994); Commonwealth v. Harris, 409 Mass. 461, 465 (1991); Commonwealth v. Fryar, 414 Mass. 732, 738 (1993); Commonwealth v. Long, 419 Mass. 798, 807 (1995).  His failure to raise the issue constitues ineffective assistance of counsel.  See Commonwealth v. Saferian, 366 Mass. 89 (1974); Breese v. Commonwealth, 415 Mass. 249, 251 n.4 (1993); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836 (1985); Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995).

Based on the aforementioned reasons, Affidavit of Leroy Williams, and Memorandum of Law, defendant is entitled to a new trial because appellate counsel failed to provide him with effective assistance of counsel.

Dated:  May 19, 1997.

                              Respectfully submitted,

                              _Leroy Williams_

                              Leroy Williams, Pro Se.
                              MCI-Norfolk - Box 43
                              Norfolk, MA  02056

COMMONWEALTH OF MASSACHUSETTS

39

Suffolk,SS.                                    Superior Court
                                               Nos. 89-079573-6


Commonwealth

v.

Leroy Williams


## MOTION FOR LEAVE OF COURT TO AMEND NEW TRIAL MOTION

Now comes the defendant in the above-criminal matter
respectfully move this Honorable Court for leave of court to
amend his motion for new trial.  The defendant contends that
the present motion now pending before this court is "inadequate"
and it does not firmly present to this court the issue as out-
lined within said motion.  The amended motion adequately
stresses the point the defendant contends where he was gravely
prejudiced by the trial court's actions or inactions and
asks this court's permission to amend his argument in order
for this Honorable Court to make a fair and just judgment of
the issue presented.

                              Respectfully Submitted,

                              Leroy Williams, Pro se
                              MCI-Cedar Junction
                              P.O. Box 100
                              South Walpole, Ma. 02071

Dated: 6-5-01

*[handwritten left margin]* 7/25/01 Motion to Amend New Trial motion is ALLOWED on the basis that a reading of Amended New Trial motion is DENIED without hearing

*[handwritten bottom]* Commonwealth v. Williams, 422 Mass. 111 (1996), Demonstrates such over-whelming evidence of guilt that the judges harmless error in not permitting the prosecutor to state her reasons for striking the juror would not have changed the outcome in any way. There is no reason to disturb this verdict. Justice would not be served.

*[handwritten right margin]* Allen Guy Volterra, Justice of the Superior Court

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
                                          SUPREME JUDICIAL COURT
                                          FOR SUFFOLK COUNTY
                                          SJ-2001-0424

                                          SUFFOLK SUPERIOR COURT
                                          DOCKET NO.  89-079573-6


COMMONWEALTH

vs.

LEROY WILLIAMS


MEMORANDUM AND ORDER


The defendant filed a petition pursuant to G. L. c. 278, § 33E, seeking leave to appeal the denial of his motion for a new trial in connection with his 1990 conviction for murder in the first degree.  That conviction was affirmed on direct appeal in Commonwealth v. Williams, 422 Mass. 111 (1996).  The defendant's motion for a new trial asserts that he was denied a fair trial because, during the jury selection process, one or more black jurors were challenged by the Commonwealth, but the judge did not require (or permit) the Commonwealth to offer a race neutral explanation for those challenges.  The motion was denied by a Superior Court judge who concluded that any error committed by the judge in "not permitting the prosecutor to state her reason for striking the juror" was "harmless error" in light of the "overwhelming evidence of guilt."

General Laws c. 278, § 33E, requires that a defendant, who

2

seeks to appeal the denial of a motion for new trial after his
direct appeal, establish that his claim presents a "new and
substantial" question.  Neither prong of this requirement has
been met in this case.

First, an issue is not "new" if it could have been raised on
direct appeal but was not.  <u>Commonwealth</u> v. <u>Burnett</u>, 428 Mass.
469, 473 (1998).  Clearly a claim involving the Commonwealth's
use of peremptory challenges during jury selection could have
been raised in the defendant's direct appeal, and no explanation
(other than ineffectiveness of appellate counsel) is offered to
the contrary.

More importantly, the issue raised is not substantial.  The
record establishes that defense counsel objected to the
Commonwealth's challenge of one black juror,[1] claiming that she
was being challenged because she was African-American.  The judge
rejected the challenge without requiring (or permitting) the
Commonwealth to provide an explanation, even though it is obvious
from the record that the prosecutor was prepared to do so.[2]
There was no error.  The exercise of a peremptory challenge is
presumed to be proper unless the objecting party makes a prima

---

[1] The defendant contends that the Commonwealth challenged
three black jurors, but that is not established in the record of
the case.

[2] During individual voir dire, this juror had informed the
court that her son had been charged with murder, and that she had
questions about whether she could be impartial.

3

facie showing of improper use. <u>Commonwealth</u> v. <u>Burnett</u>, 418
Mass. 709, 770 (1994). It is only if the judge concludes that
such a showing has been made that the burden shifts to the
challenging party to provide a bona fide, race neutral basis for
the challenge. <u>Id</u>. at 771. While it is preferable that trial
judges make an explicit finding as to whether a prima facie
showing has been made whenever such an objection has been raised,
the record is clear that the judge implicitly made such a
finding. The objection was noted but rejected by the judge, and
the prosecutor was instructed not to provide an explanation.
This implicit finding is due deference, and is not clearly
erroneous.

The defendant's petition is denied.

Robert J. Corby
Associate Justice

Entered:  October 26, 2004

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                SUPREME JUDICIAL COURT
                                            FOR SUFFOLK COUNTY
                                            SJ-2001-0424

                                            SUFFOLK SUPERIOR COURT
                                            DOCKET NO.  89-079573-6


                            COMMONWEALTH

                               <u>vs</u>.

                          LEROY WILLIAMS


                              <u>ORDER</u>


        A motion to reconsider the Memorandum and Order issued on

October 24, 2004, was filed by the defendant.  Upon

reconsideration, it is ORDERED that the motion to reconsider is

denied.

        After reviewing my Memorandum and Order of October 26, 2004,

I am revising the language in the second paragraph on pages 2 and

3.  An amended Memorandum and Order shall issue with those

revisions.


                                        Robert J. Cordy
                                        Associate Justice

Entered:  December 15, 2004

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
                                    SUPREME JUDICIAL COURT
                                    FOR SUFFOLK COUNTY
                                    SJ-2001-0424

                                    SUFFOLK SUPERIOR COURT
                                    DOCKET NO.  89-079573-6


COMMONWEALTH

<u>vs</u>.

LEROY WILLIAMS


**AMENDED**
MEMORANDUM AND ORDER

The defendant filed a petition pursuant to G. L. c. 278, § 33E, seeking leave to appeal the denial of his motion for a new trial in connection with his 1990 conviction for murder in the first degree.  That conviction was affirmed on direct appeal in <u>Commonwealth</u> v. <u>Williams</u>, 422 Mass. 111 (1996).  The defendant's motion for a new trial asserts that he was denied a fair trial because, during the jury selection process, one or more black jurors were challenged by the Commonwealth, but the judge did not require (or permit) the Commonwealth to offer a race neutral explanation for those challenges.  The motion was denied by a Superior Court judge who concluded that any error committed by the judge in "not permitting the prosecutor to state her reason for striking the juror" was "harmless error" in light of the "overwhelming evidence of guilt."

General Laws c. 278, § 33E, requires that a defendant, who seeks to appeal the denial of a motion for new trial after his direct appeal, establish that his claim presents a "new and substantial" question.  Neither prong of this requirement has been met in this case.

First, an issue is not "new" if it could have been raised on direct appeal but was not.  <u>Commonwealth</u> v. <u>Burnett</u>, 428 Mass. 469, 473 (1998).  Clearly a claim involving the Commonwealth's use of peremptory challenges during jury selection could have been raised in the defendant's direct appeal, and no explanation (other than ineffectiveness of appellate counsel) is offered to the contrary.

More importantly, the issue raised is not substantial.  The record establishes that defense counsel objected to the Commonwealth's challenge of one black juror¹ claiming that she was being challenged because she was African-American.  The judge allowed the Commonwealth's challenge without requiring (or permitting) the Commonwealth to provide an explanation, even though it is obvious from the record that the prosecutor was prepared to do so.²  There was no error.  The exercise of a

_____

¹ The defendant contends that the Commonwealth challenged three black jurors, but that is not established in the record of the case.

² During individual voir dire, this juror had informed the court that her son had been charged with murder, and that she had questions about whether she could be impartial.

peremptory challenge is presumed to be proper unless the objecting party makes a prima facie showing of improper use. Commonwealth v. Burnett, 418 Mass. 709, 770 (1994). It is only if the judge concludes that such a showing has been made that the burden shifts to the challenging party to provide a bona fide, race neutral basis for the challenge. Id. at 771. While it is preferable that trial judges make an explicit finding as to whether a prima facie showing has been made whenever such an objection has been raised, the record is clear that the judge implicitly found that it had not. The objection was noted but rejected by the judge, and the prosecutor was instructed not to provide an explanation. This implicit finding is due deference, and is not clearly erroneous.

   The defendant's petition is denied.

                                   Robert J. Cordy
                                   Associate Justice

Entered:  December 15, 2004

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS
Leroy Williams

**DEFENDANTS**
Michael Thompson, Superintendent

(b)  County of Residence of First Listed Plaintiff    Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)
Joseph F. Krowski; Law Offices of Joseph F. Krowski; 30 Cottage Street; Brockton, MA 02301 (508) 587-3701

Attorneys (If Known)

04 cv 12642 DPW

## II.  BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1   U.S. Government
        Plaintiff

☒ 3   Federal Question
        (U.S. Government Not a Party)

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

|                                  | PTF | DEF |                                                      | PTF | DEF |
|----------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State            | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State         | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT    (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment
     & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted
     Student Loans
     (Excl. Veterans)
☐ 153 Recovery of Overpayment
     of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product
     Liability
☐ 320 Assault, Libel &
     Slander
☐ 330 Federal Employers'
     Liability
☐ 340 Marine
☐ 345 Marine Product
     Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle
     Product Liability
☐ 360 Other Personal
     Injury

**PERSONAL INJURY**
☐ 362 Personal Injury -
     Med. Malpractice
☐ 365 Personal Injury -
     Product Liability
☐ 368 Asbestos Personal
     Injury Product
     Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
     Property Damage
☐ 385 Property Damage
     Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/
     Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities -
     Employment
☐ 446 Amer. w/Disabilities -
     Other
☐ 440 Other Civil Rights

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure
     of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational
     Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards
     Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting
     & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc.
     Security Act

### PRISONER PETITIONS
☐ 510 Motions to Vacate
     Sentence
**Habeas Corpus:**
☒ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal
     28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff
     or Defendant)
☐ 871 IRS—Third Party
     26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and
     Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
     Exchange
☐ 875 Customer Challenge
     12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information
     Act
☐ 900 Appeal of Fee Determination
     Under Equal Access
     to Justice
☐ 950 Constitutionality of
     State Statutes

## V.  ORIGIN    (Place an "X" in One Box Only)

☐ 1 Original
      Proceeding
☒ 2 Removed from
      State Court
☐ 3 Remanded from
      Appellate Court
☐ 4 Reinstated or
      Reopened
☐ 5 Transferred from
      another district
      (specify)
☐ 6 Multidistrict
      Litigation
☐ 7 Appeal to District
      Judge from
      Magistrate
      Judgment

## VI.  CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §2254
Brief description of cause:
Petitioner requests the Court to issue a writ of Habeas Corpus

## VII.  REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
     UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII.  RELATED CASE(S)
IF ANY
(See instructions):    JUDGE                          DOCKET NUMBER

DATE
12/17/04

SIGNATURE OF ATTORNEY OF RECORD
Joseph F. Krowski

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** _Leroy Williams v. Michael Thurstor_

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
   740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

   ___ III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
   315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
   380, 385, 450, 891.

   ✗ IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
   690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.**

   _none_

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**    YES    (NO)

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)**    YES    (NO)

   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**    YES    (NO)

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?**    YES    (NO)

7. **DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).**    (YES)    NO

   A. **IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?**

   EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

   B. **IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?**

   EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** _Joseph F. Krowski_
**ADDRESS** _30 Cottage Stt Brockton MA 02301_
**TELEPHONE NO.** _508-587-3701_

(Cover sheet local.wpd - 11/27/00)