UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO: 04CV12642DPW

| | |
|---|---|
| LEROY WILLIAMS,<br>Petitioner<br><br>v.<br><br>MICHAEL THOMPSON<br>Respondent | MEMORANDUM SUPPORTING PETITIONER'S APPLICATION FOR FEDERAL HABEAS RELIEF UNDER 28 U.S.C. §2254. |

## STATEMENT OF JURISDICTION

The Petitioner, Leroy Williams ("Mr. Williams" or "Petitioner")seeks relief in the form of the venerable Writ of Habeas Corpus available to him under 28 U.S.C. §2254. Accordingly, after Single Justice Robert J. Cordy of the Supreme Judicial Court of Massachusetts denied on December 15, 2004, Mr. Williams' petition for leave to appeal the denial of his motion for a new trial in connection with a 1990 conviction which was affirmed on direct appeal in Commonwealth v. Williams, 422 Mass. 111 (1996), there are no state remedies available to the Petitioner in the Commonwealth of Massachusetts by which he can seek vindication of his rights under the United States Constitution. See U.S. ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034 (3rd Cir. 1975).

Mr. Williams is held at the Massachusetts Correctional Institution in Shirley, Massachusetts. Michael Thompson is the Superintendent. Tom Reilly is the Attorney General for the Commonwealth of Massachusetts.

1

**PRAYER FOR RELIEF**

The Petitioner, Mr. Williams, moves this court to issue a writ of Habeas Corpus to be brought before the court to the end that he may be discharged from his unconstitutional confinement and restraint. In the alternative, the petitioner moves the court to grant such other relief as may be appropriate and just to dispose of the matter as the law requires. See 28 U.S.C. §2243.

**ISSUES PRESENTED**

I. WHETHER OR NOT THE STATE COURT DEPRIVED MR. WILLIAMS OF HIS FEDERAL CONSTITUTIONAL RIGHT TO RECEIVE EQUAL PROTECTION OF THE LAW BY ALLOWING THE PROSECUTOR TO EXERCISE IMPERMISSIBLY A PEREMPTORY CHALLENGE WITHOUT REQUIRING A NONDISCRIMINATORY JUSTIFICATION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

II. WHETHER OR NOT THE STATE COURT DEPRIVED MR. WILLIAMS OF HIS RIGHT TO RECEIVE DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT BY DENYING A MOTION FOR A REQUIRED FINDING OF NOT GUILTY WHERE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT

**STANDARD OF REVIEW**

Habeas review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In assessing a federal habeas corpus claim raised by a petitioner, the federal court reviews the record of the state court proceedings to determine whether or not the decisions reached by the state court were "contrary to, or involved an unreasonable application of" Supreme Court precedent. 28 U.S.C. §2254(d)(1); O'Brien v. DuBois, 145 F.3d 16, 24 (1st Cir. 1998). The first step in the analysis is to consider whether the Supreme Court has prescribed a rule that governs a petitioner's claim.

A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Santiago v. Spencer, 346 F.3d 206, 211 (1st Cir. 2003).

A state court decision represents "an 'unreasonable application' if the state court identifies the correct governing legal principle from a Supreme Court decision, but 'unreasonably applies that principle to the facts of the prisoner's case.'" Santiago, 346 F.3d at 211 *quoting* Williams, 529 U.S. at 413. Reasonableness is an objective concept. The federal court analyzes the record to determine whether the application of clearly established federal law was objectively unreasonable. If so, the habeas petition must be granted. Id.

## STATEMENT OF PROCEEDINGS

Mr. Williams' trial commenced On April 5, 1990, in Suffolk Superior Court before the Honorable J. Murphy and jury. Mr. Williams had been indicted by a Suffolk County Grand Jury on August 30, 1989, and charged with one court of first degree murder, one count of unlawful possession of a Class D controlled substance, one count of trafficking in cocaine, and one count of unlawfully carrying a firearm. On April 11, 1990, at the close of the commonwealth's case, Mr. Williams moved for a required finding of not guilty which was denied. On April 12, 1990, at the close of all the evidence, Mr. Williams renewed his motion for a required finding of not guilty, which again was denied. On April 17, 1990, Mr. Williams was found guilty of the offenses as charged. A notice of appeal was promptly filed on the same day.

On February 20, 1996, the Supreme Judicial Court for the Commonwealth of Massachusetts issued a written, published decision affirming Mr. Williams' conviction.

Commonwealth v. Leroy Williams, 422 Mass. 111 (1996). May 20, 1996, represented the ninetieth (90th) day to file for *certiorari* to the Supreme Court; however, Mr. Williams did not so file. Instead, on May 19, 1997, Mr. Williams filed a motion for new trial in Suffolk Superior Court. On July 25, 2001, the motion for new trial was denied without oral argument or an evidentiary hearing.

Mr. Williams then filed a petition, pursuant to Mass. Gen. L. ch. 278 §33E, to the Single Justice of the Supreme Judicial Court seeking leave to appeal the denial of his motion for new trial. The petition was denied by the Honorable Robert J. Cordy on October 26, 2004. A motion for reconsideration was filed. On December 15, 2004, Justice Cordy amended his original order while affirming the denial. Notice of Justice Cordy's final decision was received on December 16, 2004, and Mr. William's federal petition for habeas was filed the next day, December 17, 2004, the last day of the statute of limitations.

## STATEMENT OF FACTS

Mr. Williams' jury trial began on April 5, 1990, with jury selection proceedings. During the process, Juror 16-11, Phyllis Bland, a black woman, was examined by the court through individual *voir dire*. (Tr.1/46). She explained to the judge that her son had been arrested for assault and battery. (Id.) She was employed as a data transcriber. She assured the judge that she would listen to the evidence and make up her mind with the other jurors whether Mr. Williams had been proven guilty or innocent. (Tr.1/48). She was seated in chair twelve (12).

The commonwealth, through its prosecuting attorney, exercised a peremptory challenge to remove Ms. Bland from the jury. (Tr.1/66-7). Mr. Williams, through counsel, objected to the challenge and attempted to make a *prima facie* showing: "I would like to go on the record and call to the Court's attention that the defense objects to the challenge--" (Id). The court refused to

entertain the objection: "Just make the challenges, please, and return to your seats." (Id). Ms. Bland was excused. (Id).

The jury was ultimately sworn without Ms. Bland. (Tr.1/70). After the jury was sworn and seated, the defense was allowed symbolically to place his objection and *prima facie* showing on the record:

> For the record, the defense objected to the Commonwealth's challenge of Juror No. 12. It was a black lady. I believe it was Juror...16-11. I base that objection on that there was no valid reason why that juror shouldn't be selected. It's obvious that the defendant is a minority. There were very few minority person in the venire, and the defendant objects. (Tr.1/70-1).

Despite the *prima facie* showing, the commonwealth was not required and did not provide a race neutral non-discriminatory justification for the challenge. (Id). The trial proceeded nevertheless.

Leroy Foster, the decedent, lived alone at 544 Washington Street, Apartment 1 in Dorchester, MA. (Tr.2). On June 26, 1989, he was shot and killed. Mr. Williams was arrested several blocks from the scene of the shooting. Witnesses testified that Mr. Williams was seen running from the direction of the shooting. Mr. Williams was pursued by the police and arrested without a warrant by officer Paul McLaughlin. (Tr.2/187-88).

Fritz Lindo worked as a self-employed tailor at 563 Washington Street, Dorchester. On the morning of June 26, 1989, he was working at his shop. Between 11:00 and 11:30 a.m. he went across the street to buy a newspaper. (Tr.2/22). As he was walking, he heard a "bang, bang" noise. (Tr.2/24). He turned in the direction of the noise and saw a bullet coming towards his head. (Id). He then saw two (2) men running from the building of 544 Washington Street.

Lindo provided a less than generic description of the two men he claims to have seen running from the building. (Tr.2/26-7). Lindo said both men had guns. (Id). One man was light skinned, about sixty-nine inches (69") in height with a thirty-nine to forty inch (39"-40") chest. Everything happened quickly and he made his observations in only a few seconds. (Tr.2/27-31). Lindo saw the light skin person throw something which looked like a gun across the fence beside 563 Washington Street. (Tr.2/31). No gun was ever recovered.

Kevin Boswell was walking down Washington Street to go to his sister's house on the morning of June 26th. (Tr.2/76-8). He saw a friend working on a car in front of 544 Washington Street and he stopped to assist him. (Tr.2/78). While helping his friend, he heard three (3) loud booming noises and saw two (2) people running from the building. (Tr.2/82). Boswell described one of the men as light-skinned, medium build, between five feet nine inches and five feet eleven inches (5'9"—5'11") tall with a short Afro hair style. (Tr.2/84-5). Boswell saw the light skin man with a gun and saw him throw something over the fence. (Tr.2/88). No gun was ever recovered.

Sheba Brown lived with her two (2) children in the first floor rear apartment of 544 Washington Street. (Tr.2/132). She was in her bedroom on June 26th at around 11:00 a.m. when she heard arguing and things falling from inside apartment 1. (Tr.2/138-41). She then heard sounds that were like gun shots. (Id). She looked through the peep-hole in her door and saw the decedent laying on the floor and doorway of his apartment. (Tr.2/143). Although Ms. Brown saw a person running from the apartment, she could not identify Mr. Williams as the person she saw running. (Tr.2/165).

Mr. Williams waived his Fifth Amendment right and testified at trial. Leroy Foster was his friend. (Tr.6/5-7). Mr. Williams went to Foster's house on June 26th because Foster called Mr. Williams' home and left his address with Mr. Williams' mother. (Tr.6/9-11). When Mr. Williams arrived at Foster's apartment, Foster gave him marijuana and cocaine to sell and a bank card. (Tr.6/12). Afterwards, Mr. Williams left the apartment and walked to the store for a soda. On his way back he helped a man in front of 544 Washington Street who locked his keys in his car. (Tr.6/17). While helping the man, a person Mr. Williams did not know called him into Foster's apartment saying that his friend wanted to see him.

When he entered the apartment, Mr. Williams was confronted by two (2) black men with guns. (Tr.6/19-21). Mr. Williams was able to break free and hide in the bathroom before he heard three (3) shots fired. (Tr.6/22). When he emerged from the bathroom, the apartment was empty but for Foster who was bleeding profusely. (Tr.6/23). Mr. Williams held Foster in his arms and saw a neighbor looking at him screaming. (Tr.6/23). Out of panic, Mr. Williams ran from the building. (Id). When he was arrested by McLaughlin he shouted, "I didn't do it, I didn't do it."

## ARGUMENT

I.  **MR. WILLIAMS WAS DEPRIVED EQUAL PROTECTION UNDER THE LAWS BY THE COMMONWEALTH'S IMPERMISSIBLE DISCRIMINATORY USE OF A PEREMPTORY CHALLENGE AGAINST A MINORITY JUROR.**

The commonwealth's impermissible use of peremptory challenges during jury selection deprived Mr. Williams of his Federal Constitutional Right of Equal Protection Under the Law in violation of the Fourteenth Amendment to the United States Constitution. In accordance with well settled Supreme Court precedent, a three (3) part framework is employed in evaluating

7

whether or not a government's use of a peremptory challenge violated a defendant's right to equal protection. Batson v. Kentucky, 476 U.S. 79, 96-98 (1986); Latimore v. Spencer, 994 F. Supp. 60, 63-4 (D. Mass. 1998).

First, a defendant must make a *prima facie* showing of the government's purposeful discrimination in its use of peremptory challenges. Latimore, 994 F. Supp. at 63. A defendant may present his *prima facie* showing on behalf of himself or on behalf of the excluded juror. Powers v. Ohio, 499 U.S. 400, 415 (1991). At the *prima facie* stage it must shown that the excluded juror is a member of a protected class. Powers, 499 U.S. at 409. That showing is coupled with other relevant circumstances raising an inference of unlawful discrimination. Batson, 476 U.S. at 96. One such circumstance is where the racial identity between the defendant and the excused juror is the same. Powers, 499 U.S. at 416.

After a *prima facie* showing is made, the burden shifts to the government to articulate a race neutral explanation. Batson, 476 U.s. at 97; United States v. Perez, 35 F.3d 632, 635 (1994). An explanation is race neutral if it articulates reasoning other than a juror's race. Hernandez v. New York, 500 U.S. 352, 360 (1991). An explanation is not race neutral if discriminatory intent is inherent in the explanation. Id.

Finally, if the prosecutor articulates a race-neutral reason, the court must determine whether or not the defendant has carried the burden of proving that the articulated reason was a pretext for purposeful race discrimination. Perez, 35 F.3d. at 635, 636.

In Mr. Williams' case, the state court utterly failed to follow the well settled Supreme Court precedent of Batson. See Batson, 476 U.S. at 96-8. Mr. Williams is black. The government exercised a peremptory challenge against a black juror. (Tr.1/66-7). There were little, if any minorities in the jury venire. (Tr.1/71). Counsel for Mr. Williams objected to the

8

government's peremptory challenge of the black juror. (Tr.1/67). Yet the state court refused to follow the three party analytical framework.

The state court would not allow counsel to make his *prima facie* showing until after the jurors were sworn. (Tr.1/70-1). After they were sworn, counsel placed his objection on the record and made his *prima facie* showing. (Tr.1/71). The state court did not, in violation of Batson, require the commonwealth to articulate a race-neutral reason for the challenge. Instead the state courts have repeatedly inserted their own reasoning for the challenge. However, at trial, when the challenge was exercised, the government was not called upon to explain its conduct. (Tr.1/71). Simply because the state court can articulate its own race neutral rational for the challenge does not mean that the prosecutor at the time of the challenge was not exercising the challenge in a discriminatory manner. Batson does not permit the court to insert its own race neutral rationale, it must be articulated by the government. See Batson, 476 U.S. at 97.

Because no race-neutral reason was given by the commonwealth, we are left only with Mr. William's *prima facie* showing of an impermissibly exercised challenge. With the *prima facie* case unrebutted, as a matter of law, Mr. Williams carried his burden of showing that the peremptory challenge was exercised in violation of his Equal Protection Rights. Therefore, Mr. Williams' conviction must be overturned and a new trial ordered.

II.   MR. WILLIAMS WAS DEPRIVED OF DUE PROCESS OF LAW IN THAT HE WAS CONVICTED UPON EVIDENCE THAT WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT IN VIOLATION OF THE FOURTEENTH AMENDMENT.

Mr. Williams' conviction cannot stand because it was based on insufficient evidence that did not prove guilt beyond a reasonable doubt. The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction

except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 364 (1970). Therefore, a conviction cannot stand unless after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). If after all the evidence is presented it appears that the question of guilt is left to conjecture or surmise with no solid foundation in established facts, a guilty verdict cannot stand. Commonwealth v. Salemme, 395 Mass.594, 599-600 (1985).

In Mr. Williams' case, he was tried under the commonwealth's joint venture theory. Under the joint venture doctrine, a joint venturer is one who aids, commands, counsels, or encourages the commission of a crime while sharing with another the mental state required for the crime. Commonwealth v. Soares, 377 Mass. 461, 470 (1979). Three elements must be proven beyond a reasonable doubt to establish criminal responsibility as a joint venturer: a defendant 1) was present at the scene of a crime, 2) with knowledge that another intends to commit a crime or with an intent to commit a crime, and 3) by agreement is willing and available to help the other if necessary. Commonwealth v. Longo, 402 Mass. 482, 486 (1988).

In this case there was no evidence that Mr. Williams fired the fatal shots or any shots at all. Based on the government's evidence the killing could have been accidental. Sheba Brown testified that she heard scuffling and things falling prior to hearing shots fired. (Tr.2/140-41). A rational juror could conclude that the shots were fired accidentally during the struggle. When evidence tends equally to sustain one of two

inconsistent propositions, neither of them can be deemed to have been proven beyond a reasonable doubt. See Commonwealth v. O'Brien, 305 Mass. 393, 400 (1940).

There was no evidence presented that the killing was the result of a plan or agreement shared by Mr. Williams and another. Although Mr. Williams testified that he was present at the scene of the killing, presence alone is insufficient to establish guilt beyond a reasonable doubt. See Commonwealth v. Walsh, 407 Mass. 740 (1990).

Reviewing the evidence in the light most favorable to the commonwealth reveals that the decedent sustained several gun shot wounds to the chest. No witness could identify Mr. Williams as the person who shot the decedent. No physical evidence was presented by the commonwealth tying Mr. Williams to the killing. Witnesses who testified at trial only surmised that they saw Mr. Williams with a gun while running from the building. No witness could provide a specific, credible description of the gun. No gun was ever found. The evidence presented in state court was insufficient to support a guilty verdict; therefore, the conviction must be overturned and a required finding of not guilty enter.

## CONCLUSION

For the forgoing reasons the Defendant's conviction must be overturned and required finding of not guilty enter. In the alternative, a new trial must be ordered.

By his attorney

_____
JOSEPH F. KROWSKI, ESQUIRE
LAW OFFICES OF JOSEPH F. KROWSKI
30 Cottage Street
Brockton, MA 02301
(508) 587-3701
BBO: 280540

Date: December 23, 2004

### CERTIFICATE OF SERVICE

I, Joseph F. Krowski, Esquire, hereby certify that I have this 23rd day of December, 2004, served a copy of the above Memorandum Supporting Petitioner's Application for Federal Habeas Relief Under 28 U.S.C. §2254 on Michael Thompson, Superintendent, MCI-Shirley, P.O. Box 1218, Shirley, MA 01464; and Tom Reilly, Attorney General, Office of the Attorney General, One Ashburton Place, Boston, MA 02108 by first class mail postage prepaid.

_____
JOSEPH F. KROWSKI, ESQUIRE