UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LEROY WILLIAMS,<br>           Petitioner,<br>v.<br><br>MICHAEL THOMPSON,<br>           Respondent. | )<br>)<br>)<br>)   Civil Action No. 04-12642-DPW<br>)<br>)<br>)<br>) |

### MEMORANDUM OF THE RESPONDENT IN OPPOSITION TO THE PETITION FOR WRIT OF HABEAS CORPUS

The respondent submits this memorandum in opposition to the petition for writ of habeas corpus filed by Leroy Williams ("the petitioner") who was convicted in 1990 of murder in the first degree, unlawful carrying of a firearm, unlawful possession of a Class D controlled substance (marihuana) and trafficking in cocaine. He bases his claim for habeas corpus relief in his petition on two allegations: (1) that he was deprived of his 6th and 14th Amendment rights by the Commonwealth's use of a peremptory challenge against a juror (Petition, p. 6, ¶ 12A, Ground One) and (2) that there was insufficient evidence to support a conviction for first-degree murder beyond a reasonable doubt (Petition, p. 7, ¶ 12B, Ground Two).

Ground One is in procedural default. As discussed more fully below, the Supreme Judicial Court (SJC) is required to provide extraordinarily broad plenary review of convictions for first-degree murder pursuant to G. L. c. 278, § 33E. The petitioner's conviction received such review in 1996. However his later effort to raise and pursue Ground One in a motion for new trial was denied by the Superior Court and his gatekeeper petition seeking leave to file an appeal of the denial to the SJC was rejected by

2

the Single Justice because it was not a "new and substantial" question. (Supp. Ans., Exh. 6 at 2). This decision rests on an adequate and independent state law ground and, as such, is not reviewable by a federal habeas court.

Additionally, regarding Ground Two, the SJC's adjudication of the petitioner's sufficiency of the evidence claim was not contrary to nor an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).

## PRIOR PROCEEDINGS

The petitioner's convictions for first-degree murder and unlawfully carrying a firearm were affirmed by the Supreme Judicial Court on February 20, 1996 pursuant to G. L. c. 278, § 33E. *Commonwealth v. Williams,* 422 Mass. 111, 661 N.E. 2d 617 (1996)(Supp. Ans. Exh. 3).[1] In 1997, the petitioner filed a motion for a new trial. (Supp. Ans. Exh. 5 at C.A. 11-13). On June 5, 2001, he filed a motion for leave to amend his motion for new trial which was allowed. (Supp. Ans., Exh. 5 at 2, C.A. 17). The amended motion for a new trial itself was denied on July 25, 2001. (Supp. Ans. Exh. 5 at 2, C.A. 17). On December 15, 2004, the Single Justice of the SJC, Robert J. Cordy, denied the petition for leave to appeal the denial of the motion for a new trial. (Supp. Ans. Exh. 6, Amended Memorandum and Order, *Commonwealth v.Williams*, Supreme Judicial Court SJ-2001-1424). The instant habeas corpus petition was filed on December 17, 2004.

---

[1] The petitioner limited his arguments on appeal to the convictions for first degree murder and unlawful carrying of a firearm. *Williams*, 422 Mass. at 112, n.1.

3

## STATEMENT OF FACTS

The Supreme Judicial Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981) (holding that presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or an appellate court").

The Supreme Judicial Court described the facts as follows:

> On June 26, 1989, the victim, Leroy Foster, died from multiple gunshot wounds to the chest and arm. The fatal shooting took place at about 11:15 A.M. Gunshots were heard by three witnesses, Sheba Brown, Kevin Boswell, and Fitz Lindo, who saw the [petitioner] and another man flee the building immediately after the shots were fired. Both Boswell and Lindo testified that the [petitioner] was carrying a gun which Boswell described as large, approximately seven to eight inches long, silver with a black handle.[2] Boswell and Lindo saw the [petitioner] throw something over a fence into an empty lot.[3]
>
> At the time of the shooting, Boston police Officers Paul C. McLaughlin and Daniel Fagan were on patrol in a two-man cruiser travelling inbound on Washington Street toward Codman Square in the Dorchester section of Boston at a slow rate of speed. On reaching the intersection of Washington and Aspinwall Streets, Officer McLaughlin observed two black males running at "sprint pace" down Washington Street. He observed that bystanders had turned toward the runners and were pointing at them. He saw the [petitioner] pull a white shirt over

---

[2] There is some dispute as to whether Lindo testified that the second man also carried a gun. The transcript represents the testimony as follows: "First I saw a brown guy with a gun; and, then, after a split second, I saw another guy, a dark gun." The Commonwealth asserts this was a typographical error by the court reporter who meant to type "a dark guy." This is the only evidence that the second man carried a gun.

[3] The police later conducted an extensive search of the empty lot identified by the witnesses but did not recover the gun.

4

his head and discard it.[4]  McLaughlin also noticed that this man was sweating and had a strained expression on his face.

   As the officers began to follow the men, an unidentified white, middle-aged man approached the cruiser and handed Officer Fagan a beeper, stating, "I don't know what happened but one of them dropped this."[5]  The officers continued to follow the men but did not activate the cruiser's lights or siren, nor call to the men to stop.  Neither man turned to look at the cruiser.  On Hopestill Street, the officers observed the [petitioner] run behind a house.  Officer Fagan got out of the cruiser to investigate while McLaughlin drove the cruiser around the corner to Talbot Avenue.  Officer McLaughlin then stopped the cruiser and proceeded to investigate on foot.  He observed the [petitioner], who he now noticed was covered with blood, attempt to scale a chain link fence.  McLaughlin identified himself as a police officer and ordered the [petitioner] to stop.  The [petitioner] retreated back through the yards.  At this point, Officer McLaughlin drew his service revolver and followed the [petitioner].  He located the [petitioner] behind a blue house and again ordered him to stop and get on the ground.  The [petitioner] stated, "I didn't mean it, I didn't mean it, I don't want to go back to prison."[6]  The [petitioner] also stated that he had been shot but the officer observed no wounds.  As Officer Fagan arrived, the [petitioner] got up and attempted to run past Officer McLaughlin.  Both officers pushed the [petitioner] to the ground and attempted to handcuff him as he resisted.

   While handcuffing the [petitioner], the officers received a radio broadcast reporting a confirmed shooting at 544 Washington Street, approximately 200 to 400 yards from where they had stopped the [petitioner].  In response to Officer Fagan's request for a description of the suspects, the dispatcher described a short, dark-skinned, black male and a tall, light-skinned, black male, shirtless and covered with blood.  Fagan reported that the latter description matched that of an individual

---

[4] This action also was observed by Mia Tuwen who was at work in the Codman Square Cleaners at 563 Washington Street.  She saw the man take off his shirt and discard it on the ground near a mailbox in front of her store.  She later identified the shirt for police.  The shirt was tested for the presence of human blood and found to contain type A human blood, the victim's blood type.

[5] Al Camarata, an employee of Metro Media Paging, stated that the beeper was leased to Leroy A. Foster, the victim.

[6] The latter part of the [petitioner]'s statement, "I don't want to go back to prison," was excluded at trial but not at the hearing on the motion to suppress.

5

they now had in custody and was instructed to bring the suspect back to the scene of the shooting.

On route to 544 Washington Street, the [petitioner] was read the warning required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and shown to the civilian witnesses. (Further citations omitted.) Both Lindo and Boswell identified the [petitioner] as one of the two men they had seen running from the apartment following the gunshots. The [petitioner] was then searched for weapons. The police recovered two plastic bags on the [petitioner]'s person, one containing a substance later identified as cocaine and the other a substance later identified as marihuana.[7] The [petitioner] was then taken to the police station and booked. During the search incident to booking, the police discovered, on the [petitioner]'s person, a BayBank Express card in the name of Norris A. Foster. The [petitioner] admitted that the card belonged to the victim, Leroy Foster.[8] The [petitioner]'s cap, pants, and sneakers were taken for blood analysis at the request of the assistant district attorney. The analysis revealed the presence of human blood but the blood type could not be determined.

Later investigation at the scene of the shooting revealed all windows, except those facing the front of the apartment, were shut and locked. There was no practical means of leaving the building other than the front door and no persons were found in the hallway or corridors of either building.

An autopsy of the victim revealed that he had sustained three gunshot wounds, two to the chest and one to the upper right arm. The first chest wound appeared to be a distance wound. From observation of stippling around the second wound, the medical examiner determined that this wound was inflicted at close range. The medical examiner determined that either chest wound was fatal.

*Williams*, 422 Mass. at 112-115.

---

[7] A police expert, Sergeant Detective Gil Griffiths, testified that, in his opinion, given the amount and purity of the cocaine found on the [petitioner]'s person, it was intended for distribution purposes. He estimated the street value of the cocaine as approximately $4,500 and the value of the marihuana as approximately $200 to $225.

[8] The victim's brother, Norris Foster, confirmed at trial that he previously had given the bank card to the victim.

6

## ARGUMENT

**I.   GROUND ONE IS PROCEDURALLY DEFAULTED AND IS PRECLUDED FROM FEDERAL HABEAS CORPUS RELIEF.**

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial.  Rather, the remedy is limited to the consideration of federal constitutional claims."  *Burks v. DuBois*, 55 F.3d 712, 715 (1st Cir. 1995).  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (affirming that the purpose of federal habeas corpus review is to ensure that individuals are not imprisoned in violation of the Constitution).  *See also Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials").  Thus, federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground.  *See Coleman v. Thompson*, 501 U.S. 722 (1991).  In *Coleman*, the Supreme Court held that where

> a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id*. at 750.  *See Gunter v. Maloney*, 291 F.3d at 78.  A petitioner's procedural default constitutes an adequate and independent state ground so long as the state consistently applies the rule and has not waived it.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Burks v. DuBois*, 55 F.3d at 716; *Puleio v. Vose*, 830 F.2d 1197, 1199 (1st Cir. 1987), *cert. denied*, 485 U.S. 990 (1988).

7

As a matter of Massachusetts appellate procedural law, special provisions exist for those convicted of first degree murder. Under G.L. c. 278, § 33E, such a "capital" defendant has a right of direct appeal to the SJC, without the case being first entered on the docket of the Appeals Court. *See Dickerson v. Latessa*, 872 F.2d 1116, 1117-1118 (1st Cir. 1989).[9] The scope of the SJC's review is exceedingly broad under § 33E: it reviews the "whole case" to determine whether the verdict is against the weight of the evidence, and the court is empowered to order a new trial or to reduce the verdict to a lesser degree of guilt if the interests of justice so require. *See Dickerson v. Latessa*, 872 F.2d at 1118; *Trigones v. Attorney General*, 420 Mass. 859, 863, 652 N.E.2d 893, 895 (1995); 32 Nolan & Sarorio, MASSACHUSETTS PRACTICE SERIES, *Criminal Law*, §189 (3d ed. 2001).

After this plenary review on direct appeal, a capital defendant may not appeal the decision of the Superior Court denying a post appeal motion for a new trial unless the "gatekeeper," *i.e.*, a single justice of the Supreme Judicial Court for Suffolk County, finds that the appeal presents a "new" and "substantial" question which ought to be determined by the full court. *Dickerson v. Latessa*, 872 F.2d at 1118. The gatekeeper's denial of a defendant's petition for leave to appeal is final and unreviewable. *Commonwealth v. Ambers*, 397 Mass. 705, 710-711, 493 N.E.2d 837, 841 (1986). *See McLaughlin v. Gabriel*,

---

[9] Under Section 33E, entry of a "capital case" in the SJC "shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence . . . or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence." A "capital case" under Massachusetts law is one "in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree." If a motion for a new trial is filed in superior court after the SJC decision is final, "no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." G. L. c. 278, § 33E.

726 F.2d 7, 9 (1st Cir. 1984). The gatekeeper only reviews a defendant's claim to determine whether it meets the conjunctive procedural requirement that it be both "new and substantial." *Leaster v. Commonwealth*, 385 Mass. 547, 549-550, 432 N.E.2d 708, 709-710 (1982). *See Dickerson v. Latessa*, 872 F.2d at 1118; *McLaughlin v. Gabriel*, 726 F.2d at 9.

Following the Supreme Judicial Court's plenary review of the petitioner's conviction, he filed an amended motion for a new trial attempting to raise a issue not presented in his direct appeal, i.e., denial of a fair trial due to the peremptory challenge of a black juror by the Commonwealth. (Supp. Ans. Exh. 5, C.A. 17). The motion was denied. *Id*. Pursuant to Section 33 E, the denial of a motion for new trial brought by a person convicted of first-degree murder may not be appealed without leave of a "gatekeeper," *i.e.*, a Single Justice of the SJC. The statute dictates that leave shall only be granted "on the ground that [the motion] presents a new and substantial question which ought to be determined by the full court." The Single Justice rejected the petitioner's gatekeeper petition for leave to appeal the denial of the motion. (Supp. Ans. Exh. 6). The Single Justice decided that the claim was not new since it could have been raised on direct appeal. *Id*. He also concluded that the claim not substantial. *Id*.[10] The denial of the § 33E gatekeeper petition is a "classic

---

[10] In reference to the substantiality question, in his Amended Memorandum and Order the Single Justice stated that defense counsel had objected to the Commonwealth's challenge of one black juror, claiming that she was being challenged because she was African-American. The Single Justice noted that the trial judge had "allowed the challenge without requiring (or permitting) the Commonwealth to provide an explanation even though it was obvious from the record that the prosecutor was prepared to do so." (Supp. Ans. Exh. 6). (See Tr. I:70-71). The Single Justice pointed out that during voir dire the juror had informed the court that her son had been charged with murder and that she had questions about whether she could be impartial. (See Tr. I: 46-48). Defense counsel failed to make a prima facie showing of improper use of the peremptory challenge which the trial judge implicitly found. (Defense counsel indicated that there were other African-Americans in the venire. Tr.I:71). Trial counsel's objection was noted but rejected by the judge and the prosecutor was instructed not to provide an explanation. The Single Justice concluded that there was no error committed, no new and substantial issue was raised and

9

example of an independent and adequate state ground." *Simpson v. Matesanz*, 175 F.3d at 207 (citations omitted).  *See Moore v. Ponte*, 186 F.3d 26, 32 (1st. Cir. 1999) (denial of gatekeeper petition functions as a procedural default).  This is not a case where the gatekeeper bypassed the question of whether the issue was "new," and instead found that it was not "substantial," *see Phoenix v. Matesanz*, 189 F.3d 20, 25-27 (1st Cir 1999), but rather, this is a case where the gatekeeper determined that neither part of § 33E's conjunctive procedural requirement could be met.

Federal habeas corpus review of the petitioner's claim is precluded absent a showing of "cause for" and "prejudice from" the procedural default.  *Coleman v. Thompson*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Gibson v. Butterworth*, 542 F. Supp. 6 (D. Mass.), *aff'd*, 693 F.2d 16 (1st Cir. 1982).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Magee v. Harshbarger*, 16 F.3d 469, 471 (1st Cir. 1994).  Mere attorney error does not constitute "cause" within the meaning of the rule.  *Murray v. Carrier*, 477 U.S. at 488; *Puleio v. Vose*, 830 F.2d at 1201-1202.  Here, the petitioner cannot show cause for failing to present in his direct appeal to the SJC.  Nor can he demonstrate prejudice.  Prejudice requires the petitioner to demonstrate "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

---

leave to appeal the motion for a new trial was denied.  (Supp. Ans. Exh. 6).

    The Commonwealth's Opposition to the [Petitioner's] Application for Leave to Appeal Denial of Motion for New Trial fully details the trial events regarding the peremptory challenge of the juror.  (See Supp. Ans. Exh. 5 at 5-14).

10

dimensions." *Ortiz v. DuBois*, 19 F.3d 708, 714 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 739 (1995), quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). Finally, in the absence of a demonstration of both cause and prejudice, the petitioner may be excused from his procedural default if he can demonstrate that failure to entertain these claims will result in a miscarriage of justice. *Ortiz v. DuBois*, 19 F.3d at 714, quoting *Murray v. Carrier*, 477 U.S. at 495-496. *See Sawyer v. Whitley*, 505 U.S. 333, 339-340 (1992). This narrow exception is reserved for those rare cases in which the conviction of a petitioner who may be actually innocent of the charges will occur if a constitutional error is not redressed. *See Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 864 (1995)("this Court [has] explicitly tied the miscarriage of justice exception to the petitioner's innocence"). To show that a miscarriage of justice would result, the petitioner "'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty].'" *Ortiz v. DuBois*, 19 F.3d at 714, quoting *Sawyer v. Whitley*, 505 U.S. at 348. This situation may arise where "a petitioner supplements a constitutional claim with a 'colorable showing of factual innocence.'" *McCleskey v. Zant,* 499 U.S. at 495, quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). In other words, the miscarriage of justice exception is concerned with "actual" as compared to "legal" innocence. *See Sawyer v. Whitley*, 505 U.S. at 339; *Smith v. Murray*, 477 U.S. 527, 537 (1986). In light of the presumptively correct facts found by the SJC as well as the overwhelming evidence of the petitioner's guilt at trial, the actual innocence exception is clearly inapplicable.

11

II. **THE STATE COURT ADJUDICATION OF THE PETITIONER'S SUFFICIENCY OF THE EVIDENCE CLAIM WAS NOT CONTRARY TO NOR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW.**

**A. STANDARD OF REVIEW**

Because the instant petition for writ of habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), review of the petitioner's claims is governed by that statute. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The relevant statutory provision, 28 U.S.C. § 2254(d)(1), states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

In *Williams v. Taylor,* 529 U.S. 362, 412 (2000) (O'Connor, J., Opinion of the Court) the Supreme Court gave independent meaning to both the "contrary to" and the "unreasonable application" clauses of the statute. *See id*. at 405. Under the first prong of § 2254(d)(1), the Court stated that a decision may be "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), in two ways. First, "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams,* 529 U.S. at 405. Second, "[a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of

12

this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405-406.[11]

The Court interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," a phrase shared by both clauses, to "refer[] to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The statute thus "restricts the source of clearly established law" to the Supreme Court's holdings. *Id.*

Under the second prong of § 2254(d)(1), "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" qualifies as "'an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407 (quoting 2254(d)(1)). In determining whether a state-court decision unreasonably applies Supreme Court precedent, "a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. As the Court stressed, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

---

[11] Under both scenarios, "contrary to" means "diametrically different," "opposite in character or nature," or "mutually opposed," such that — as the text of relevant precedent of this Court" in order to satisfy the "contrary to" clause. *Williams v. Taylor*, 120 S.Ct. at 1519. Justice O'Connor emphasized that a "run-of-the-mill state-court decision applying the correct legal rule from [its] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id*. at 1520.

13

federal law erroneously or incorrectly.  Rather, that application must also be unreasonable. *Id.* at 411.  The First Circuit recently explained the degree of error that must be shown by the petitioner to reach the level of an "objectively unreasonable" state court decision. "[S]ome increment of incorrectness beyond error is required….The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir. 2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### B. SUFFICIENCY OF THE EVIDENCE

Under 28 U.S.C. § 2254(d)(1) the focus of an inquiry by a habeas court considering a a sufficiency challenge to a conviction is the reasonableness of the state court decision. *Hurtado v. Tucker*, 245 F. 3d 7, 18 (1st Cir. 2001).  *See Williams v. Matesanz,* 230 F.3d 421, 426 (1st Cir. 2000).  Here the state appellate court applied *Commonwealth v. Latimore*, 378 Mass. 671, 676, 393 N.E.2d 370 (1979) which is the Massachusetts equivalent of *Jackson v. Virginia,* 443 U.S. 307 (1979), the clearly established Supreme Court precedent governing challenges to the sufficiency of the evidence.  Under *Jackson*, the appellate court must consider the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 319. [12]

---

[12] **Both the First Circuit and Supreme Judicial Court consider the *Jackson* test "essentially identical" or "substantially comparable" to the Massachusetts directed verdict standard long applied by the state appellate courts.  *See Nadworny v. Fair*, 872 F.2d 1093, 1102 (1st Cir. 1989) and *Commonwealth v. Latimore*, 378 Mass. at 677.**

14

**Habeas petitions which challenge the sufficiency of the evidence upon which their conviction rests do not implicate the "contrary-to" strand of the habeas statute since the state court adjudications at issue are essentially "a run-of-the-mill state court decision applying the correct legal rule from the [Supreme Court's] cases to the facts of a prisoner's case."** *Hurtado*, **245 F. 3d at 15, quoting** *Williams*, **529 U.S. at 406. The habeas court must turn to the second prong and determine whether the state court decision was an unreasonable application of** *Jackson v. Virginia.*

**Under** *Jackson*, **a reviewing court may only consider whether a rational trier of fact could have found proof of guilt beyond a reasonable doubt.** *Jackson,* **443 U.S. at 324. The reviewing court does not weigh the evidence, and "must accept the jury's resolution of the evidence as long as it is within the bounds of reason."** *Kelly v. Roberts,* **998 F.2d 802, 808 (10th Cir. 1993). Nor should it "reread the record from the petitioner's perspective",** *Palmariello v. Superintendent of M.C.I. Norfolk,* **873 F. 2d 491, 493 (1st Cir.),** *cert. denied*, **493 U.S. 865 (1989), or make its own subjective determination of guilt or innocence,** *Herrera v. Collins,* **506 U.S. 390, 401(1993),** *quoting Jackson*, **443 U.S. at 318-319.** [13]

---

[13] **Prior to AEDPA, it was the practice of a habeas court to make the inquiry** *de novo* "on a cold record without any special deference to either the state's highest court, *see Jackson*, 443 U.S. at 318- 25, or the federal district court, *see Scarpa v. DuBois*, 38 F.3d 1, 9 n. 5 (1st Cir.), *cert. denied*, 513 U.S. 1129 (1994), beyond the persuasive power of their (conflicting) interpretations of the record." *Stewart v. Coalter*, 48 F.3d 610, 614 (1st Cir.), *cert. denied*, 516 U.S. 853 (1995). **With the passage of AEDPA,** *de novo* **review has been explicitly rejected in favor of a deferential standard of review,** *Williams*, **120 S. Ct. at 1519, in which the state court's adjudication of the evidentiary sufficiency claim becomes the focus of the inquiry and the measuring rod is whether the decision was an unreasonable application of** *Jackson'*s **core holding.**

15

In *Hurtado*, the First Circuit suggested guidelines as to some principles to be applied in an insufficiency-of-the-evidence case in making the evaluation of "objective unreasonableness" under §§ 2254(d)(1):

> **(1) The focus of the inquiry is on the state court decision;**
>
> **(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;**
>
> **(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;**
>
> **(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and**
>
> **(5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.**

*Hurtado*, 245 F. 3d at 18.

C. APPLICATION

In the case at bar, the Supreme Judicial Court scrutinized and gave appropriate weight to all the evidence in the case; considered the key arguments of the petitioner; and properly applied their own precedent. *Hurtado*, 245 F. 3d at 18. The Supreme Judicial Court identified the correct standard in assessing the evidence supporting the petitioner's conviction by invoking Mass. R. Crim. P . 25(a)[14] and *Commonwealth v. Nadworny*, 396

---

[14] Rule 25A reads, in pertinent part, as follows:
The judge on motion of a defendant or on his own motion shall enter a finding of not guilty of the offense charged in an indictment or complaint or any part thereof after the evidence on either side is closed if the evidence is insufficient as a matter of law to sustain a conviction on the charge.

16

Mass. 342, 353-354, 486 N.E.2d 675, *cert. denied,* 477 U.S. 904 (1985)(Supp. Ans. Exh. 3 at 8) in which the SJC applied the Massachusetts sufficiency of the evidence rule of *Commonwealth* v. *Latimore*, 378 Mass. at 676. *See infra.* at n. 12.

The rule in *Jackson/Latimore* must be applied with "specific reference to the elements of the offense as defined by state law," *Campbell v. Fair,* 838 F.2d 1, 4 (1st Cir. 1998), *quoting Jackson* , 443 U.S. at 324. *See also Daughtry v. Dennehy*, 946 F. Supp. 1052 (Mass. 1996).

The petitioner was convicted of first-degree murder on a joint venture theory. The three elements required to prove a joint venture beyond a reasonable doubt are that each person was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary. *Williams*, 422 Mass. at 625. The SJC concluded that:

> Viewed in a light most favorable to the Commonwealth, a rational jury could have determined that the Commonwealth proved each of these three elements. The defendant admitted to being present at the scene of the crime. He and a shorter, darker-skinned man entered the building together and fled together. A rational jury could infer from this that they were available and willing to help each other if necessary. Joint venture may be proved by circumstantial evidence, including evidence of flight together. (Citations omitted.)

422 Mass. at 625.

The court further explained that the jury could infer the necessary intent to commit murder from the carrying of the firearm and the wounds themselves. *Id.* "Inferences permitted to a jury 'need only be reasonable and possible and need not be necessary or inescapable . . . It is left to the jury to resolve conflicting reasonable inferences."

17

*Commonwealth v. Sim*, 39 Mass. App. Ct. 212, 217, 654 N.E.2d 340(1995).  Under state precedent, direct evidence of who shot the victim is not necessary where there is strong circumstantial evidence that one of the joint venturers shot the victim. *See Commonwealth v. Chipman*, 418 Mass. 262, 268, 635 N.E.2d 1204 (1994).  The court reasoned that the fact that is possible that some other person fired the fatal shots does not mean that the jurors were left to speculate as to the defendant's guilt.  *Williams*, 422 Mass. at 121.

> We have held that "[i]n order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime."  *Cramer v. Commonwealth*, 419 Mass. 106, 112, 642 N.E.2d 1039 (1994), *quoting  Commonwealth v. Fancy*, 349 Mass. 196, 200, 207 N.E.2d 276 (1965).  "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding."  *Commonwealth v. Lydon*, 413 Mass. 309, 312, 597 N.E.2d 36 (1992), *quoting  Commonwealth v. Brown*, 401 Mass. 745, 747, 519 N.E.2d 1291 (1988).

To prove murder beyond a reasonable doubt, the Commonwealth must show that a defendant unlawfully killed a human being with malice aforethought.  G.L. c. 265, § 1.  The Commonwealth proceeded on a theory of deliberate premeditation.  The SJC viewed the evidence in the light most favorable to the Commonwealth and concluded that there was sufficient evidence for a jury to determine that the petitioner acted with deliberately premeditated malice aforethought.  *Williams*, 422 Mass. at 625-626.  The joint venturers brought a loaded revolver to the victim's apartment and fired three shots into the victim from varying distances.  *Id.*  The use of a firearm in the killing is sufficient to support a verdict of murder in the first degree based on deliberately premeditated malice aforethought.  *Id.*  Evidence that the petitioner brought a gun to the scene of a planned crime is evidence of planning, which included preparation for using the gun.  *Id.*  The fact

18

that three shots were fired additionally supported the verdict. The number of shots fired at the victim, the fact that the joint venturers carried a loaded handgun "coupled with fair inferences from the circumstances of the shooting, support a finding of sufficient reflection to constitute deliberately premeditated murder". *Commonwealth v. Stirling,* 351 Mass. 68, 75, 218 N.E.2d 81 (1966).[15]

The Supreme Judicial Court's determination that there was sufficient evidence to support the petitioner's conviction for first degree murder is entitled to deference where it comports both with state criminal law and with the reasonable inferences that may be drawn from the evidence by the jury under state law. When evaluating the sufficiency of the evidence, a habeas court must accept the state law on permissive inferences that may be drawn by the jury once a primary fact has been established. *See Wright v. West,* 505 U.S. 277, 282 (1992)(state law permitted inference that a person who fails to explain, or falsely explains his exclusive possession of recently stolen property is the thief). This is precisely what the Supreme Court said in *Jackson.*

> Under the standard established . . . as necessary to preserve the due process protection recognized in *Winship,* a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

443 U.S. at 326; *Wright v. West,* 505 U.S. 277, 296-297 (1992). In addition, if a state appellate court determines as a matter of state law that certain historical facts warrant an inference of an ultimate fact, and credits such an inference drawn by a jury as warranted

---

[15] In its brief to the SJC, the Commonwealth thoroughly detailed the considerable evidence against the petitioner at trial. (Supp. Ans. Exh. 2 at 51-62.)

19

by the evidence, under the meaning of AEDPA that determination must be given deference.

In sum the SJC's determination that the Commonwealth presented evidence sufficient for a reasonable jury to find the petitioner guilty of first-degree murder beyond a reasonable doubt is not an unreasonable application of *Jackson*.

## CONCLUSION

For the above-stated reasons the petition for writ of habeas corpus should be denied

>Respectfully submitted,
>
>THOMAS F. REILLY
>ATTORNEY GENERAL
>/s/ Annette C. Benedetto
>Annette C. Benedetto
>Assistant Attorney General
>Criminal Bureau
>One Ashburton Place
>Boston, Massachusetts 02108
>(617) 727-2200
>BBO No. 037060

## CERTIFICATE OF SERVICE

_____ I hereby certify that a true copy of the above document was served upon the petitioner's counsel at the address below, by first class mail, postage pre-paid, on June 3, 2005.

Joseph F. Krowski
Law Offices of Joseph F. Krowski
30 Cottage Street
Brockton, MA 0230

>/s/ Annette C. Benedetto
>Annette C. Benedetto
>Assistant Attorney General

Case 1:04-cv-12642-DPW    Document 10    Filed 06/03/2005    Page 20 of 20