UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LEROY WILLIAMS,         )
    Petitioner,     )   CIVIL ACTION NO.
                 )   04-12642-DPW
    v.             )
                 )
MICHAEL THOMPSON,      )
    Respondent.     )
                 )
                 )

MEMORANDUM AND ORDER
April 14, 2006

Petitioner Leroy Williams is currently serving a life sentence without parole as a result of his 1990 Massachusetts state court conviction for first degree murder.[1]  He seeks habeas relief in this court pursuant to 28 U.S.C. § 2254 on two grounds: (1) that the Commonwealth's use of a peremptory challenge to excuse a black juror violated the Fourteenth Amendment and (2) that there was insufficient evidence to support a conviction of first degree murder beyond a reasonable doubt.

**I. BACKGROUND**

**A.  Factual background**

Under 28 U.S.C. § 2254(e)(1), findings of fact by the state court enjoy a presumption of correctness that may be rebutted only by clear and convincing evidence.  See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Coombs v. Maine, 202 F.3d 14, 18

---

[1] Williams was also convicted of unlawful possession of a Class D substance (marijuana), trafficking in cocaine, and unlawfully carrying a handgun.

(1st Cir. 2000).  I summarize below the facts as set forth in Commonwealth v. Williams, 422 Mass. 111 (1996).

In a shooting that took place at about 11:15 AM on June 26, 1989, Leroy Foster died from multiple gunshot wounds to the chest and arm.  Id. at 112.  Three witnesses heard the shots and saw Williams and another man flee the building immediately afterwards.  Id.  Two of those witnesses testified that Williams was carrying a large, silver gun, approximately seven to eight inches long, with a black handle, and that he threw something over a fence into an empty lot.[2]  Id.

At the time of the shooting, Boston police officers Paul C. McLaughlin and Daniel Fagan were on patrol in a police cruiser at a slow speed.  Id. at 113.  McLaughlin saw two black men running at "sprint pace" and bystanders turning towards the men and pointing.  Id.  He saw Williams pull a white shirt over his head and then discard the shirt.  Id.  McLaughlin noticed that the man was sweating and had a strained expression on his face.  Id.  Another witness also saw the man pull off and discard the shirt.  Id. at n. 4.  The shirt was later found to contain blood matching the victim's blood type.  Id.

As the officers began to follow the men, an unidentified white, middle-aged man approached the cruiser and handed Fagan a beeper, stating, "I don't know what happened, but one of them dropped this."  Id. at 113.  It was later discovered that the

---

[2] The police later conducted an extensive search of the lot, but found no weapon.

beeper had been leased to the victim.  Id. at n. 5.  Without activating the lights or siren or calling out, the officers continued to follow the men.  Id.

They observed Williams run behind a house.  Id.  Fagan got out of the cruiser to investigate on foot.  Id.  After parking the car around the corner, McLaughlin got out, and he saw Williams, covered in blood, attempting to scale a chain link fence.  Id.  McLaughlin identified himself as a police officer and ordered Williams to stop.  Id.  Williams retreated back through the yards.  Id.  McLaughlin drew his service revolver and followed Williams, ultimately locating him behind a blue house. Id.  When McLaughlin ordered Williams to stop and get on the ground, the petitioner stated, "I didn't mean it, I don't want to go back to prison."  Id.  He also claimed that he had been shot, but the officer observed no wounds.  Id. at 114.  As Fagan approached, Williams attempted to flee.  Id.  Both officers pushed him to the ground and attempted to handcuff him as he resisted.  Id.

While handcuffing Williams, the officers received a radio broadcast reporting a confirmed shooting about 200 to 400 yards from where they had stopped Williams.  Id.  The dispatcher described the suspects as a short, dark-skinned black male and a tall, light-skinned black male, shirtless and covered with blood. Id.  Fagan reported that the latter description matched the individual that they had in custody and was told to bring Williams back to the scene of the shooting.  Id.

-3-

En route, Williams was given <u>Miranda</u> warnings, and at the scene, two witnesses identified him as one of the two men they had seen fleeing the apartment following the gunshots.  <u>Id.</u>  The officers then searched Williams for weapons and found two plastic bags containing cocaine and marijuana.  <u>Id.</u>  At a search incident to booking, officers found a bank card in the name of Norris A. Foster, which Williams admitted belonged to the victim.  <u>Id.</u> at 115.  Analysis of Williams' cap, pants, and sneakers revealed the presence of human blood, but the type could not be determined. <u>Id.</u>

Later investigation of the scene of the shooting revealed that all windows, except those facing the front of the apartment, were shut and locked, and the front door was the only practical means of leaving the building.  <u>Id.</u>

An autopsy of the victim showed that he had sustained three gunshot wounds, two to the chest and one to the upper right arm. It appeared that one chest wound had been inflicted from a distance and one at close range.  <u>Id.</u>

**B.  Procedural History**

Williams was indicted for first degree murder in the death of Leroy Foster.  Trial began on August 5, 1990 with jury selection.  During the process, Juror 16-11, Phyllis Bland, a black woman employed as a data transcriber, told the court that her son had been arrested for assault and battery and attempted murder less than ten years ago.  Trial Transcript ("Tr.") at 1:46.  When the judge asked her if she could be impartial, she

-4-

replied, "I think it would be difficult due to the circumstances of my son."  Tr. at 1:47.  The judge asked her again if she could listen to the evidence and make up her mind whether Williams was guilty or innocent, and she said, "I'll try."  Tr. at 1:48.

Ms. Bland was the only black woman on the seated jury.  She remained on the panel until the Commonwealth used a peremptory strike to remove her.  Tr. at 1:66.  Defense counsel immediately objected to the peremptory challenge, but the court declined his request for a discussion at side bar.  Tr. at 1:67.  After the jury was sworn in, defense counsel repeated his objection for the record, noting that Ms. Bland was black and there were very few minorities on the venire.  Tr. at 1:70-71.

Williams was found guilty of first degree murder and unlawful carrying of a firearm and sentenced to life imprisonment.  On appeal pursuant to Mass. Gen. L. c. 278 §33E, the Supreme Judicial Court affirmed the conviction, finding, inter alia, that the evidence was sufficient to support the verdict.  See Williams, 422 Mass. at 120-123.  Appellate defense counsel did not raise the equal protection issue presented by the Commonwealth's use of a peremptory challenge to remove Ms. Bland.

In May 1997, Williams moved for a new trial alleging that the peremptory challenge was discriminatory, and that his attorney was ineffective for failing to present the issue to the SJC.  In July 2001, the motion judge found that although the trial court erred in not requiring the prosecutor to provide an explanation, the error was harmless in light of the "overwhelming

evidence of guilt."  Suffolk Superior Court, No. 89-079573 (Jul. 25, 2001) (Respondent's Supp. Answer., Ex. 5 at 17).

Pursuant to Mass. Gen. L. c.278, §33E, Williams petitioned the Single Justice of the SJC to grant him leave to appeal the trial court's denial of his motion for a new trial.  Justice Cordy denied the petition originally, and again in response to a motion to reconsider.  <u>Commonwealth v. Williams</u>, SJ-2001-0424 (Oct. 26, 2004).  The instant petition for habeas relief was filed in this court in December 2004.

## II. DISCUSSION

### A. Standard of Review

This petition for habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act"), and, therefore, is governed by the Act.  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997). AEDPA mandates that a federal court shall not grant a writ of habeas corpus based on a claim that was "adjudicated on the merits" in a state court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A state court decision is contrary to the Supreme Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in the Court's cases, or if it decides a case differently from the Court on a set of

-6-

materially indistinguishable facts.  <u>Brown v. Payton</u>, 125 S. Ct.
1432, 1438 (2005).  A state court decision involves an
unreasonable application of the Court's clearly established
precedents if the state court identifies the correct governing
legal principle from the Court's decisions, but applies it in an
"objectively unreasonable manner."  <u>Id.</u> at 1439.

   An objectively unreasonable application of federal law
differs from an incorrect application of federal law.  <u>Williams</u>
<u>v. Taylor</u>, 529 U.S. 362, 410 (2000).  As Justice O'Connor
explained in <u>Williams</u>, the federal courts have an obligation to
say what the law is, and therefore, a state court's reasonable,
but incorrect legal determination should not be allowed to stand.
<u>Id.</u> at 411.  However,

> a federal habeas court may not issue the writ simply because
> that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established
> federal law erroneously or incorrectly.  Rather, that
> application must also be unreasonable.

<u>Id.</u>

## B. <u>Batson</u> challenge

   The first ground for the petitioner's habeas claim is a
<u>Batson</u> challenge, named for the U. S. Supreme Court case holding
that the equal protection clause forbids a prosecutor from
challenging potential jurors solely on account of race.  <u>Batson</u>
<u>v. Kentucky</u>, 476 U.S. 79 (1986).  Specifically, the petitioner
contends that the Commonwealth violated the Fourteenth Amendment
when it used a peremptory strike to remove the only black woman

on the seated panel.  The Commonwealth, for its part, does not argue the merits of the Batson question, but responds that federal habeas review is precluded because the claim is in procedural default.

Habeas review in a federal court is available only to claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. §2254(d).  This restriction reflects "the long-standing rule that federal courts do not review state court decisions that rest on independent and adequate state grounds."  Phoenix v. Matesanz, 189 F.3d 20, 24 (1st Cir. 1999).  Independent and adequate grounds exist "where a state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement."  Id.  A federal court may, nevertheless, review a procedurally defaulted case if the petitioner can demonstrate cause for the default and prejudice from the claimed violation of federal law or that a fundamental miscarriage of justice will occur if the claim is not heard.  Gunter v. Maloney, 291 F.3d 74, 78 (1st Cir. 2002) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

Mass. Gen. L. c. 278, §33E grants defendants in capital cases, such as this one, a right of direct appeal to the SJC. See Dickerson v. Latessa, 872 F.2d 1116, 1117 (1st Cir. 1989). Once the direct appeal has been concluded, §33E prohibits further review of a defendant's claim by the SJC unless a Single Justice, acting as a gatekeeper, finds that the claim is "new and

-8-

substantial."  Mass. Gen. L. c.278, §33E.  "The gatekeeper's
determination is final and unreviewable."  Phoenix, 189 F.3d at
24.

    Whether the gatekeeper's decision is subject to habeas
review depends on whether it "rests, expressly or inferentially,
on a state-law procedural waiver (or some other state law
consideration), or whether, instead, it involves the resolution
of the merits of [the defendant's] federal constitutional claim."
Id. at 25.  If the gatekeeper justice denied the claim based on
state procedural rules, habeas review is precluded.  Simpson v.
Matesanz, 175 F.3d 200, 206 (1st Cir. 1999).  However, if he
reviewed the federal claim on the merits, "it removes any bar to
federal court review that might otherwise have been available."
Phoenix, 189 F.3d at 26.

    On direct appeal to the SJC, the petitioner raised a number
of issues, including the lawfulness of police behavior in
pursuing and seizing him, the sufficiency of the evidence for the
murder conviction, the reliability of the man who gave the beeper
to the police, and the possible defense of intoxication.
Williams, 422 Mass. at 115, 121, 123-24.  But he did not present
the Batson issue.  After the SJC affirmed the conviction, the
petitioner raised the Batson challenge for the first time in his
motion for a new trial.  A Superior Court judge denied that
motion, holding that although the trial judge improperly
prevented the prosecutor from stating her reasons for striking

the juror, the evidence of guilt was so "overwhelming" that the
error was harmless.  Suffolk Superior Court, No. 89-079573 (Jul.
25, 2001) (Respondent's Supp. Answer., Ex. 5 at 17).

Pursuant to §33E, the petitioner sought leave to appeal to
the SJC the denial of his motion for a new trial.  Justice Cordy,
acting as the gatekeeper justice, denied the petitioner's
application on the ground that the Batson challenge presented no
"new or substantial issues".  Williams, SJ-2001-0424 (amended) at
2.  Justice Cordy held first that the issue was not "new" because
it could have been raised on direct appeal.  Id. (citing
Commonwealth v. Burnett, 428 Mass. 469, 473 (1998)).  Second, and
more important in Justice Cordy's calculation, he found the
petitioner failed to make a prima facie showing that juror 16-11
was excused because of her race.  Id. at 2-3.  The trial judge
never made an explicit finding as to whether a prima facie case
existed, but noted and rejected defense counsel's objections and
instructed the prosecution not to provide an explanation.  Id. at
3.  Justice Cordy determined that this amounted to an implicit
finding by the trial judge that a prima facie case had not been
established.  Id.  Noting that Ms. Bland's son had been arrested
and she had expressed doubts as to her ability to be impartial,
Justice Cordy held that the trial court's implicit finding was
not clearly erroneous, and the Batson issue was not
"substantial."  Id.

The Commonwealth argues that habeas review is precluded

-10-

because Justice Cordy's decision rests on procedural grounds.
The petitioner contends otherwise, claiming that Justice Cordy
reached the merits of the <u>Batson</u> claim.  State courts are not
required to state expressly when they mean to procedurally
default claims, so I must examine the opinion to determine the
nature of the holding.  See <u>Coleman v. Thompson</u>, 501 U.S. 722,
739 (1991) ("[W]e will not impose on state courts the
responsibility for using particular language in every case in
which a state prisoner presents a federal claim").

Justice Cordy's opinion contains both substantive and
procedural elements.  His finding that the <u>Batson</u> challenge was
not "new" was based on state procedural rules requiring
defendants to raise issues at trial or on direct appeal or else
waive them.  See <u>Burnett</u>, 428 Mass. at 473; <u>Simpson</u>, 175 F.3d at
207.  In determining whether the <u>Batson</u> claim was "substantial,"
he appeared to consider the merits of the issue.  He cited to
case law, articulated the basic framework for evaluating a <u>Batson</u>
challenge, reviewed the trial transcript, and made no mention of
the "miscarriage of justice" standard which is often employed
when the Single Justice determines that an issue is procedurally
barred.  See <u>Phoenix</u>, 189 F.3d at 25, n. 2.

Justice Cordy's discussion of the merits does not remove the
bar to federal review.  Section 33E requires the Single Justice
to address the merits, at least briefly, in determining whether a
claim is "substantial."  See <u>Cefalo v. Matesanz</u>, 49 F. Supp.2d 54

-11-

(D. Mass. 1999) (Tauro, C.J.).  In most cases, such cursory
consideration does not undercut the adequacy and independence of
the state ground.  See Phoenix, 189 F.3d at 24-25.  The First
Circuit has recognized one "special circumstance" in which habeas
review may be appropriate: where a gatekeeper justice denied a
§33E application because a petitioner's claim was new, but not
substantial.  Id. at 25.  That is not this case.  Justice Cordy
found that the claim was not new and his discussion of the
merits, although more than a passing reference, did not extend
beyond the scope of a typical §33E analysis.  Thus, I find that
the petitioner's claim is in procedural default, and unless he
can show cause for and prejudice from the defaulted claim or a
miscarriage of justice, habeas review is precluded.

Turning to the questions of cause and prejudice, the
petitioner contends that his failure to raise the Batson issue on
direct appeal resulted from ineffective assistance of counsel.
Mere attorney error does not constitute "cause" for purposes of
the procedural default doctrine; rather, the assistance rendered
must be so ineffective that it violates the constitution.
Edwards v. Carpenter, 529 U.S. 446, 451 (2000).[3]  Counsel is

---

[3] In order to qualify for consideration as just cause in
federal court, the ineffective assistance of counsel claim must
have been raised in state court.  Edwards v. Carpenter, 529 U.S.
446, 451 (2000).  There is no dispute that the petitioner in this
case raised the claim in state court.  See Commonwealth v.
Williams, SJ-2001-0424 at 2 (amended) (December 15, 2004) (Cordy,
J.).

constitutionally ineffective if the representation he provides
(1) falls "'below an objective standard of reasonableness,' and
(2) there exists 'a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different.'" Dugas v. Coplan, 428 F.3d 317, 327
(1st Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668,
688 (1984)).

　　　In general, under this standard, it is a challenging
undertaking to demonstrate ineffectiveness for failing to raise a
claim. Smith v. Robbins, 528 U.S. 259, 288 (2000). Satisfying
the first prong is relatively easy because a petitioner need only
"show that a reasonably competent attorney would have found one
nonfrivolous issue warranting a merits brief." Id. However, the
prejudice prong presents a higher hurdle. In the context of this
case, it requires that the petitioner show "a reasonable
probability that, but for his counsel's unreasonable failure to
[raise the Batson challenge] he would have prevailed on his
appeal." Id. at 285. Put differently, the petitioner must
demonstrate that the Batson issue "was clearly stronger than
issues that counsel did present." Id. at 288.

　　　This case follows the typical pattern described above in
that it succeeds on prong one, but fails on prong two. Defense
counsel clearly preserved for the record his objection to the
prosecution's use of a peremptory strike against the sole black
woman in the venire. Tr. 1: 70-71. The transcript indicates

-13-

that the trial judge never explicitly decided whether a prima
facie showing had been made, and he directed the prosecution not
to provide a non-discriminatory justification.  From this record,
a competent criminal defense attorney would have identified the
Batson issue.

     However, the petitioner has not shown a reasonable
probability that he would have succeeded on his direct appeal if
counsel had raised a Batson challenge.  Batson requires that the
court undertake a three-part inquiry.

> First, the trial court must determine whether the defendant
> has made a prima facie showing that the prosecutor exercised
> a peremptory challenge on the basis of race.  Second, if the
> showing is made, the burden shifts to the prosecutor to
> present a race-neutral explanation for striking the juror in
> question....  Third, the court must then determine whether
> defendant has carried his burden of proving purposeful
> discrimination.

Rice v. Collins, 126 Sup. Ct. 969, 973-74 (2006).

     The prima facie case requirement is "not onerous, neither
can it be taken for granted."  U.S. v. Escobar-De Jesus, 187 F.3d
148, 164 (1st Cir. 1999).  In order to make a prima facie
showing, the petitioner must show, inter alia, that the
prosecutor purposefully challenged jurors because of their race.[4]
Batson, 476 U.S. at 96.  In deciding whether such an inference

---

     [4] The other two requirements are that the government
directed its challenge at a member of a cognizable racial group
and that the challenges were peremptory rather than for cause.
U.S. v. Escobar-De Jesus, 187 F.3d 148, 165, n.11 (1st Cir.
1999).  There is no dispute that those requirements have been
satisfied in this case.

can be made, a court must consider all relevant circumstances. Id.

The petitioner appears to base his Batson challenge simply on the facts that he is black and Ms. Bland was the only black woman on the venire. These facts, standing alone, are insufficient to make a prima facie case of discrimination. Batson, 476 U.S. at 85 ("[A] defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.'") (quoting Strauder v. West Virginia, 100 U.S. 303 at 305 (1879)). The petitioner has offered no evidence of a pattern of discrimination, discriminatory questions or statements by prosecutors, or even information regarding the racial and ethnic composition of the venire.[5] See Escobar-De Jesus, 187 F.3d at 165. Moreover, the arrest of Ms. Bland's son and her clearly expressed doubts about serving impartially provide legitimate, non-discriminatory grounds for a peremptory strike. On these facts, no inference of purposeful discrimination can be drawn, and consequently, the petitioner had no reasonable probability of success on his Batson challenge.

The petitioner argues that because discrimination against potential jurors is a structural defect that corrupts the framework within which the trial proceeds, it is inherently

---

[5] In making his objection for the record, the petitioner's trial counsel claimed that there were "very few minority persons in the venire," Tr. at 1:71, but no further information has been provided.

prejudicial and excuses the procedural default.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991).  To be sure, discrimination in jury selection is a structural error, but the petitioner puts the proverbial cart before the horse.  Prejudice is not presumed from the mere allegation of purposeful discrimination; a defendant must first make a sufficient showing of impropriety.  See Batson, 476 U.S. at 96-97.  As discussed above, he has not done so.

Finally, habeas review of a procedurally defaulted claim may be appropriate when denying review would result in a "fundamental miscarriage of justice."  Simpson, 175 F.3d at 209.  This is a narrow exception that only applies if the petitioner establishes actual innocence.  Schlup v. Delo, 513 U.S. 298, 321 (1995).  To meet this test, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Id. at 327.  The petitioner has not argued that he falls within this exception, and the facts as found by the SJC indicate that he could not make such a claim.

In sum, the state court's denial of review based on procedural default constitutes an independent and adequate state ground, and the petitioner has failed to show cause and prejudice or a miscarriage of justice.  Consequently, I am precluded from reaching the merits of the petitioner's Batson claim on habeas review.

**C. Sufficiency of the evidence**

The second argument that the petitioner advances in his habeas petition is that his murder conviction was based upon insufficient evidence.[6]  The SJC considered this question on appeal, and held that the evidence was sufficient.  Williams, 422 Mass. at 123.

The SJC applied Massachusetts state law in its analysis of the sufficiency of the evidence.  See id. at 120 (citing Mass. R. Crim. P. 25(a); Commonwealth v. Nadworny, 396 Mass. 342, 353-54 (1985)).  The test for reviewing sufficiency of the evidence in Massachusetts is "essentially identical" to that established by the U.S. Supreme Court in Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Nadworny v. Fair, 872 F.2d 1093, 1102 (1989); Commonwealth v. Latimore, 378 Mass. 671, 678 (1979).  Thus the "contrary to" prong of 28 U.S.C. §2254 does not apply, and the question to be resolved here is whether the SJC applied Jackson in an "objectively unreasonable manner."  Brown, 125 S. Ct. at 1438.

The test for sufficiency of the evidence set forth in Jackson is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319 (emphasis in

---

[6] I note that the petitioner did not substantively address the issue of sufficiency of the evidence in his habeas petition or briefing.  Nevertheless, he listed the issue as grounds for his habeas petition, so I discuss it fully here.

original).  The Supreme Court has emphasized that this standard does not permit a court to "make its own subjective determination of guilt or innocence." Herrera v. Collins, 506 U.S. 390, 402 (1993).  "[T]he Jackson inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Id. (emphasis in original).

In Hurtado v. Tucker, the First Circuit provided guiding principles for evaluating "objective unreasonableness" under §2254 in sufficiency of the evidence cases:

> (1) The focus of the inquiry is on the state court decision;
>
> (2) Even with the deference due by statute to the state court's determination, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;
>
> (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;
>
> (4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and
>
> (5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

245 F.3d 7, 18 (1st Cir. 2001).

The petitioner was convicted of first degree murder on a joint venture theory.  The SJC began its analysis of sufficiency of the evidence by reciting the three elements required to prove

-18-

a joint venture beyond a reasonable doubt:

> that each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary.

Williams, 422 Mass. at 121 (citing Commonwealth v. Clarke, 418 Mass. 207, 214 (1994)).

Viewing the facts in the light most favorable to the Commonwealth, as it is required to do, the SJC then explained how a rational jury could infer that each element of the joint venture theory had been met.  First, it observed that the petitioner admitted to being present at the scene of the crime and had been seen entering and fleeing the building with a shorter, darker-skinned man.  Id.  Noting that a joint venture may be proven by circumstantial evidence, including evidence of flight, the SJC found that from these facts, a juror could infer that the two men were available and willing to help each other. Id.  (citing Commonwealth v. Santos, 402 Mass. 775, 787 (1988)).

Second, the SJC considered the element of intent.  It noted that the victim had been shot and that the petitioner had been seen carrying a gun as he left the building.  Id.  Although there was no direct evidence of who shot the victim, the SJC found that a jury could infer intent to commit murder from this circumstantial evidence.  Id.  "That it is possible that someone else fired the fatal shots," the SJC held, "does not mean that the jurors were left to speculate as to the defendant's guilt."

-19-

Id.

Finally, the SJC examined the elements of first degree murder.  In order to succeed on its theory of deliberate premeditation, "the Commonwealth must show that the defendant's decision to kill was the product of 'cool reflection.'"  Id.  A plan to murder, even one that is formed within a few seconds, meets this requirement.  Id. (citing Commonwealth v. Chipman, 418 Mass. 262, 269 (1994)).  Use of a firearm in the killing is also sufficient to support a verdict of first degree murder.  Id. at 123 (citing Commonwealth v. Bourgeois, 404 Mass. 61, 63-64 (1989)).  The SJC found that a rational jury could infer deliberate premeditation from the fact that the petitioner brought a gun to the scene of a planned crime and the victim had been shot three times at varying distances.  Id.

In arriving at its conclusion that the evidence was sufficient to support the petitioner's conviction, the SJC scrutinized and appropriately weighed the evidence and properly applied its own precedent.  The reasonableness of the SJC's decision is evident from a review of the relevant facts.  The petitioner admitted to being at the scene of the crime.  Id. at 112.  Witnesses saw him enter and exit the building with a shorter, darker-skinned man.  Id.  The petitioner was seen carrying a gun and fleeing the building with the other man shortly after shots were fired.  Id.  The two men were then seen running at "sprint pace" a few hundred yards from the crime

-20-

scene.  Id. at 113.  The petitioner was covered with blood and
discarded a shirt that contained blood of the victim's type.  Id.
at 113, n. 4.  When the petitioner was arrested, he had in his
possession a bank card belonging to the victim and various
narcotic substances.  Id. at 114-15.  The victim had been shot
three times, once in the chest at close range.  Id. at 115.

In his brief to the SJC, the petitioner argued that the
prosecution failed to prove a joint venture because there was no
evidence of a plan to kill the victim.  Appellant's Brief to SJC
at 17-18 (Supp. Answer, Ex. 1).  He contended that the evidence
pointed to an intent to commit robbery, not murder, and that the
killing was either an accident or committed by an unknown
assailant.  Although the petitioner admitted that he was present
at the scene and fled covered in blood, there were no witnesses
to the killing, and the murder weapon was never found.

The SJC addressed and rejected these arguments.  It
explained that direct evidence is not required in order to prove
a joint venture and that use of a firearm in a killing itself can
support a verdict of first degree murder.  To the petitioner's
suggestion that an unknown assailant could have committed the
crime, the SJC stated noted that "the relevant question is
whether the evidence would permit a jury to find guilt, not
whether the evidence requires such a finding."  Id. at 122
(quoting Commonwealth v. Lydon, 413 Mass. 309, 312 (1992)).

Considered as a whole, the evidence was clearly sufficient

-21-

to permit a jury to convict the petitioner on a joint venture theory.  This, as reflected in the SJC's thorough and balanced analysis, leads me to conclude that the SJC's decision was objectively reasonable.

### IV.  CONCLUSION

For the reasons set forth more fully above, I DENY the petition for a writ of habeas corpus.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE